JOSEPH GOLDEN, PLAINTIFF IN ERROR, *vs.* THE STATE OF SOUTH CAROLINA, DEFENDANT IN ERROR.

On the trial of an indictment for assault and battery against an officer of the police force, it is not error for the Judge to refuse to charge the jury that, "if the defendant was engaged in the execution of his duty, and the assault charged was committed in its discharge, then he is excused, and should be found not guilty."

Nor, where the evidence tends to prove an excess of force used, is it error for him to charge that, "if the defendant, as an officer of police, acted in good faith, without malice, passion, or ill will, but simply with intent to do his duty, and secure "the prosecutor," and not to injure him, then he is excused, and should be found not guilty."

The amount of force which an officer may lawfully use in making an arrest is so much as is necessary to effect his object; and where he is charged with having exceeded that limit, the jury must judge of the necessity, not the officer. If the amount of force used is more than the occasion requires, he is criminally liable for the excess.

Proof that he did not intend to commit an assault and battery will not excuse an officer, who, in making an arrest, exceeds the limits of his authority by using more force than the occasion called for.

BEFORE CARPENTER, J., AT CHARLESTON, JUNE TERM, 1869.

This case was brought up by writ of error from the Circuit Court for Charleston County. It was an indictment against the plaintiff in error for an assault and battery, alleged to have been committed upon Christopher H. Suhrstedt. The bill of exceptions states:

"And the State, to maintain and prove the issue on its part, gave evidence tending to prove that the defendant, Joseph Golden, a member of the police force of the city of Charleston, did, on the 25th day of December, 1868, in the city of Charleston, assault one Christopher H. Suhrstedt, of the city of Charleston, and struck him (said Suhrstedt) several severe blows with his policeman's club, upon the head and arm, by means of which his (said Suhrstedt's) arm was broken.

"And the defendant, to maintain and prove the issue on his part, gave evidence tending to prove that the defendant is a member of the police force of the city of Charleston, and was, at the time of doing the acts complained of, on duty as such. That he was on King Street, in the city of Charleston, when he saw private Mc-Mahon, of the police force, attempting to lead by the bridle, toward the guard house, the horse attached to the wagon of said Christopher H. Suhrstedt, informer in this case; that said Suhrstedt was in the wagon, sitting on the seat, "crazy drunk," and pulling the reins with all his might; that the horse had stopped, and was restless, and swaying about. from the effect of the strain upon the reins; that the defendant, seeing the difficulty of getting said Suhrstedt, who was then a prisoner, along, stepped to the wagon, and endeavored to get into it to loose the reins, secure said Suhrstedt, and assist in taking him to the guardhouse; that, as he stepped upon the wagon, the horse swung round towards him, cramping the wagon and catching his leg between the wheel and wagon box, and holding him fast; that, in this position, the defendant called to the said Suhrstedt twice to "loose the reins," so that he could get free from the wagon, but his calls were disregarded; that the defendant then, for the sole purpose of freeing himself from his perilous position, reached over with his club and struck said Suhrstedt a light blow on his arm or hand, whereupon he, said Suhrstedt, loosed one of the reins, and the defendant got free of the wagon wheel and got into the wagon; that the defendant then seized hold of the reins, which were still in the hands of said Suhrstedt, to take them from him; that, at this time, another member of the police force got into the wagon, and he, with the defendant, threw said Suhrstedt, who was still resisting, down in the wagon, and held him there, and thus, with his horse and wagon, took him to the guard house; that no blow was struck said Suhrstedt at all, but the one·described, and in the manner described, and only sufficient force used ·to take him to the guard house; that said Suhrstedt was· tried before the Mayor's Court and fined ten dollars; that, during the arrest of said Suhrstedt, the defendant acted in good faith and in the exercise of his office, without malice, passion, or ill will, and without any intention to injure said Suhrstedt in any way; that said defendant has been a member of the police force for three years, and has always sustained the highest character as a discreet and prudent officer; that a slight blow upon the arm suspended, or a fall upon it, will break it.

"The testimony on both sides being closed, the defendant prayed the Court to instruct the jury in the following particulars:

"1. That if the defendant, as an officer of the police force of the city of Charleston, was engaged in the execution of his duty, and the assault charged was committed in their discharge, then he is excused, and should be found not guilty.

"2. That if the defendant, as an officer of the police force of the city of Charleston, used force upon the prosecutor, (Suhrstedt,) to secure him as a prisoner, and used only proper and sufficient force for that purpose, then he is excused, and should be found not guilty.

"3. That if the defendant, as an officer of police, acted in good faith, without malice, passion, or ill will, but simply with intent to do his duty, and secure the prisoner, (Suhrstedt,) and not to injure him, then he is excused, and should be found not guilty."

But the Court rejected the first and third sections of the instructions prayed for by the defendant, and adopted the second, to which refusal to charge the defendant then and there excepted, before the jury withdrew from the bar.

The jury found the defendant guilty, and the Court sentenced him to pay a fine of one hundred dollars, or, in default thereof, to be imprisoned four months.

*Corbin,* for plaintiff in error.

The question to be considered is : Did the Court err in refusing to charge as requested ?

1. It can scarcely be a question that if the defendant, as an officer of police authorized to make arrests, found it necessary to forcibly place his hand upon Suhrstedt, to secure him as a prisoner, this cannot be deemed an assault.

If he "was engaged in the execution of his duty," he must be sustained. He is subject to arrest for not doing his duty.—1 Bish. Crim. Law, §§ 537, 538, 539, and cases cited.

The Court erred in refusing the third request to charge.

There can be no offense in law where none is intended. If the injury to Suhrstedt (the excessive force) was not intended, but accidental, the defendant cannot be guilty.

To constitute a crime, the act and intent must combine.—1 Bish. Crim. Law, §§ 364, 365, 366, and cases cited.

*Chamberlain,* Attorney General, for defendant in error.

I. The Circuit Judge did not err in refusing the first instruction asked for.

(*a.*) The correct rule of law, as shown by the authorities, may be stated thus : Any person who is authorized to use force may use so much force as may be necessary to accomplish the legitimate purpose for which such authority is given ; and, if he exceeds that limit, he is criminally liable for such excess.

(*b.*) This instruction was substantially and sufficiently given in the second instruction asked for and granted.

(*c.*) To constitute the offence of assault, or assault and battery, the force used must be unlawful.

" Any violence which, from the relations of the parties, or otherwise, one has the right to inflict, is not deemed an assault."—2 Bish. Crim. Law, § 58.

This proposition assumes that the person goes no further in the use of force than the law allows : " for when one who, for instance, has the right to inflict physical chastisement on another under him, proceeds with it to an illegal extent, he becomes guilty of an assault. And, generally, when force is authorized, it must not exceed what is necessary, else the excess will be criminal."—2 Bish. Crim. Law, § 58.

(*d*) The force employed must be duly proportioned to the necessities of the case.—*State* vs. *Quin,* 3 Brev., 515.

In the latter case, the motion for a new trial was refused, on the ground that, although the prosecutor gave the first blow, yet this did not justify an enormous battery ; nor, indeed, any, beyond the bounds of self-defence. " On both points," say the Court, " there seems to be some doubt as to the facts ; it was, therefore, a proper case for the jury ; and, although the defendant has not been guilty of a very great offence, he is not entitled to a new trial."

See, also, *Hannen* vs. *Edes,* 15 Mass., 346. This case went off on a question of pleading ; but the doctrine now contended for is constantly assumed, admitted and asserted, that, when the force used is excessive, or out of due proportion to the offence committed or the duty to be performed, the party so exceeding is liable therefor.

To the same effect, *vide* 1 Russell on Crimes, 755, where the cases in which the use of force may be justified are limited to cases in which the force used is, in manner and extent, " proper in such circumstances."

If a parent, in chastising his child, exceed the bounds of moderation, and inflict cruel and merciless punishment, he is a trespasser, and liable to be punished by indictment.—*Johnson* vs. *The State*, 2 Humph., 283; 1 Hawk. P. C., c. 60, § 23, and the numerous authorities there cited.

Where a woman asked a man, as he was riding along on horseback, why he had been talking about her, and threw a stone and then a stick at him, and he dismounted, and took up a stick and hit her on the head, he was held to be guilty of an assault and battery. "One," say the Court, "committing an assault, is only justifiable when it is committed in self-defence."—*State* vs. *Gibson*, 10 Iredell, 214.

(*e.*) As to all violence beyond what is necessary for self-defence, or for the enforcement of some lawful authority, the defendant is liable as the aggressor.—Bac. Abr., Tit. Assault and Battery, C.; *Truscott* vs. *Carpenter*, 1 Ld. Raym., 229; *Williams* vs. *Jones*, Cas. Temp. Hardw., 298; 2 Stra., 1049 S. C.; *Elliott* vs. *Brown*, 2 Wend., 297.

In *State* vs. *Wood*, 1 Bay., 351, the rule of law is fully stated: "The general rule of law is, that whenever the assault or battery proceeds from the plaintiff's or prosecutor's own fault, as where he gives the first blow, &c., there it is sufficient justification to the defendant. But there must be, however, in all cases, some proportion between the battery given and the first assault; for Lord Holt lays it down as a rule, that the meaning of the plea *son assault* is, that the defendant struck *in his own defence.*"—Esp., 389.

So that the degree of resistance ought to be in proportion to the nature of the injury offered—that is, that it be sufficient to ward off such injury, *and no more;* for, the moment a man disarms or puts it out of the power of the aggressor to do him further injury, he ought to desist from using further violence; and if he does commit *any further outrage*, he, in his turn, then becomes the aggressor. In Salk., 642, a question was, what assault was sufficient to maintain such a plea? Lord Holt said that Wyndham, L., would not allow such a plea if it was an *unequal return.* His Lordship then says, that, for every assault, he did not think it reasonable that a man should be *banged with a cudgel;* that a small blow will not justify an enormous beating, &c.; that the meaning of the plea was, that the defendant *struck in his own defence.*

And of the same opinion were all the Judges on this occasion, and verdict was against the defendant accordingly.

(*f.*) Where there has been a trespass without actual force, the owner of the close, &c., must first request trespassers to depart, before he can justify laying hands on them; and, if they refuse, he can only justify so much force as is necessary to remove them.—2 Whart. Crim. Law, § 1256; *Weaver* vs. *Bush*, 8 T. R., 299; 2 Ro. Abr., 548, 1. 35, 45.; 2 Salk., 641; *Com.* vs. *Mitchell*, 2 Par., 431; *Com.* vs. *Ford*, 5 Gray, 475; *Colton* vs. *State*, 4 Texas, 260.

When the defendant, as an officer of justice, is charged with assault and battery, it is a good defence to show that he was, at the time, engaged in the execution of his official duties, and that the offence was committed in their discharge.—2 Whart. Crim. Law, § 1260; 2 Ro. Abr., 546, (*a.*)

No greater force, however, can be used than is necessaay to effect the immediate object.—2 Whart. Crim. Law, § 1260; *Harrison* vs. *Hodgson*, 10 B. & C., 445.

(*g.*) The force used must not exceed the necessity of the case.— *Scribner* vs. *Beach*, 4 Denio, 450; *Elliott* vs. *Brown*, 2 Wend., 497; *Gates* vs. *Lownsbury*, 2 John. R., 427; *Gregory* vs. *Hill*, 8 T. R., 299; *Baldwin* vs. *Hayden*, 6 Conn., 453; 3 Bl. Com., 3 to 5; *Curtis* vs. *Carson*, 2 New Hamp., 539.

Therefore, when the plaintiff took hold of a *rake* in the defendant's hands, in order to take it from him, upon which the defendant immediately knocked the plaintiff down with his fist: *Held*, That the defendant was not justified.—*Scribner* vs. *Beach*, 4 Denio, 448.

*Conclusion.*—Enough has now been said to show conclusively that the rule of law prevailing, both in England, in the various States of the Union, and particularly in South Carolina, limits the force which may be justified to the actual necessities of the immediate case.

In case of self-defence, which is a primary law of human action, only so much force is justifiable in law as may be necessary to ward off actual, imminent or impending danger.

In the execution of official duties, in the maintenance of the public peace, and the enforcement of the laws, the officer will be protected in the use of so much force only as may be necessary for the prudent and effectual discharge of such official duties.

For all excess of force beyond the limits above prescribed, the individual, or the officer, becomes criminally responsible.

The question, whether such bounds are in reality overstepped, is a *question of fact for the jury*, upon the evidence.

In the present case the defendant had unlimited opportunity to

prove the necessity of *breaking Suhrstedt's arm, in order to carry him to the guard house,* but the jury found that no such necessity existed, and, under the charge of the Court, in accordance with the above cited authorities, returned a verdict of "guilty."

The refusal of the Court below to give the first instruction asked for by the plaintiff in error was not an error of law.

II. The Court below did not err in refusing the *second* instruction asked for.

(*a.*) Intent must be inferred from the facts proved. It is impossible to establish the state of a man's mind otherwise than by his actions.

In this, it is not denied that the intent is of the essence of the crime; but, simply, that the only way in which the intent can be shown or proved is, not by a resort to evidence *aliunde,* but by the *acts themselves* of the party charged.

The object of the instruction asked for was, to allow the defendant to prove, otherwise than by his acts, the want of a malicious intent.

The rule of law makes the intent deducible only from the facts. It was for the jury to find whether, upon the *facts proved,* the defendant exceeded the limit allowed by law for the use of force in such cases, and, having so found, the intent was a pure matter of inference therefrom.

(*b.*) What degree of mischief in the intent, or, in some respects, what form of evil intent must enter into the criminal assault, may not be capable of exact statement; but it seems not to be always necessary that there should be a specific determination to commit an assault, or a battery, or any other crime which, in law, includes an assault.

(*c.*) In *Keay's* case, 1 Swinton, 543, Lord Cockburn said: "It may appear, on proof, that the panel had no actual intention of injuring the boy. But there may be a constructive intention."

When the stabbing is proved, the law presumes the existence of malice, to rebut which the proof, either on the part of the State or the prisoner, must demonstrate the fact that the stabbing was done under such circumstances as would—had death ensued—have mitigated the offence from murder to manslaughter, or excusable homicide, or left it doubtful whether it was not so done.

2 Whart. Crim. Law, § 1280; *Wright* vs. *State,* 9 Yerger, 342. It is the *quo animo* which constitutes the assault, and this is matter to be left to the jury.—Selw. N. P., Tit. "*Assault and Battery.*" No

man will be excused from a trespass, unless it be shown to have been caused by inevitable necessity, and entirely without his fault; and this, again, is to be determined by the jury.— *Underwood* vs. *Hewson*, 1 Str., 595; 2 Blac. R., 896; *Dickenson* vs. *Watson*, Sir P. Jones, 205; Selw. N. P., Tit. "*Assault and Battery*," 27.

The means of affecting the criminal intent, or the circumstances evincive of the design with which the act was done, are considered to be matters of evidence to the jury to demonstrate the intent.— *U. S.* vs. *Herbert*, 5 Cranch, c. c. 87.

"Knowledge and intent, when material, must be made out by the prosecutor. It is impossible, in most cases, to make them out by direct evidence, unless they have been confessed; but *both may be gathered from the conduct of the party, as shown in proof;* and, when the tendency of his acts is direct and manifest, he *must always be presumed* to have designed the result when he acted."—1 Whart. Crim. Law, § 631; *Rex* vs. *Phillips*, 6 East, 464; *Rex* vs. *Jones*, 2 B. & Ad., 611; *State* vs. *Hart*, 4 Ired., 246.

The natural and probable consequences of every act deliberately done are presumed to have been intended by the author.— *Com.* vs. *Drew*, 4 Mass., 391; *People* vs. *Herrick*, 13 Wend., 87; *Com.* vs. *Snelling*, 15 Pick., 337; 2 Russ. on Crimes, 231; 1 Green. on Ev., § 18.

(*d.*) In *Commonwealth* vs. *Randall*, 4 Gray, 36, we find a case strikingly similar; indeed, almost identical with our present case. In that case, on the trial of an indictment of a schoolmaster for an assault on a pupil, the Judge below refused to instruct · the jury that the defendant was criminally liable for punishing a pupil, only when he acted *malo animo*, from vindictive feeling, passion, or ill will, or inflicted more punishment than was necessary to secure obedience, and not for error of opinion or judgment, provided he was governed by an honest purpose to promote the discipline and highest welfare of the school, and the best interests of the child; and instructed them that, in inflicting corporal punishment, a teacher must exercise reasonable judgment and discretion, and be governed as to the mode and severity of the punishment by the nature of the offence, the age, size, and apparent powers of endurance of the pupil, and left it to the jury to decide whether the punishment was excessive: *Held,* That the defendant had no ground of exception.

Bigelow, C. J., delivering the opinion of the Supreme Court, says: "To say the least, the instructions given by the Court below were sufficiently favorable to the defendant. If, in inflicting punishment

on his pupil, he went beyond the limit of moderate castigation, and, either in the mode or degree of correction, was guilty of any unreasonable or disproportionate violence or force, he was clearly liable for such excess in a criminal prosecution. It is undoubtedly true that, in order to support an indictment for an assault and battery, it is necessary to show that it was committed *ex intentione,* and that, if the criminal intent is wanting, the offence is not made out. *But this intent* is always inferred from the unlawful act. The unreasonable and excessive use of force on the person of another being proved, *the wrongful intent is a necessary and legitimate conclusion,* when the act was designedly committed. It then becomes an assault and battery, because purposely inflicted, without justification or excuse. Whether, under all the facts, the punishment of the pupil is excessive, must be left to the jury."

It is very seldom that cases repeat themselves so exactly as in the case just now cited and the one at bar. And, as we have before seen, *Commonwealth* vs. *Randall* is but the correct conclusion, from all the authorities cited and examined.

(*e.*) The instructions given by the Court below, viz: that "if the defendant, as an officer of the police force of the city of Charleston, used force upon the prosecutor, (Suhrstedt,) to secure him as a prisoner, and used only proper and sufficient force for that purpose, then he is excused, and should be found not guilty," were a compendious statement of the law applicable to the case; and the inference of a malicious intent drawn therefrom by the jury was legitimate and strictly according to law.

The Court below, therefore, did not err in refusing the second instruction asked for by the defendant.

The case is one of very considerable importance.

If the exceptions now taken be sustained by the Court, citizens have little, if any, protection against the violence of those in authority. If the simple fact that the plaintiff was a policeman, and was acting as such when the violence was committed, is sufficient to justify the violence, as is contended in the first instruction asked for, then any degree of violence may, under the same rule of law, be justified, without referenre to the necessities of the case.

Or, if the party indicted is allowed to prove intent by any other evidence than the circumstances of the transaction itself, then, upon the same plea, the most outrageous assault for the most trivial causes may be freely perpetrated.

Fortunately, law is still the dictate of reason and the result of prudence; and no such results can be feared, if the law, as stated in the instructions given and refused by the Court below, and as now derived from a wide survey of the authorities, shall be reaffirmed and maintained in this Court.

March 23, 1870. The opinion of the Court was delivered by

MOSES, C. J. This case comes up on a writ of error to the Circuit Court of the County of Charleston.

By the record, it appears that the plaintiff had been convicted of assault and battery on one Suhrstedt, and sentence pronounced by the Court.

Before the jury retired, his counsel prayed the presiding Judge to instruct them as follows:

"1st. That if the defendant, (below,) as an officer of the police force of the city of Charleston, was engaged in the execution of his duty, and the assault charged was committed in their discharge, then he is excused, and should be found not guilty.

"2nd. That if the defendant, as an officer of the city of Charleston, used force upon the prosecutor, (Suhrstedt,) to secure him as a prisoner, and used only proper and sufficient force for that purpose, then he is excused, and should be found not guilty.

"3rd. That if the defendant, as an officer of police, acted in good faith, without malice, passion, or ill will, but simply with intent to do his duty, and secure the prisoner, (Suhrstedt,) and not to injure him, then he is excused, and should be found not guilty."

The Judge charged in conformity with the second proposition submitted, and refused as to the first and third. This refusal is assigned as error, and we are to consider the points made by the exceptions.

The doctrine claimed in the first would give a latitude to public officers, in the execution of their duty, which would be dangerous to the public, and subversive of the proper relation which, as conservators of the peace, they should maintain to the community.

If the principle which it implies was recognized in our criminal code, no public officer could be made responsible for the use of force, no matter how unnecessary and unjust, if it were applied while he was engaged in the performance of some duty. Its comprehensive language would remove all restraints upon violence. The standard which the law establishes, to regulate, on the one

hand, the duties of public officers, and, on the other, to protect the rights of those against whom they assume to act, would be destroyed, and the will of the party charged with the power to arrest would be substituted as the rule.

If the proposition submitted by the exception should be admitted as the law, all enquiry into the acts of officers, complained of as breaches of the peace, would be precluded on the assumption that they were committed in the execution and discharge of duty.

The " necessity " which the argument for the motion speaks of is to be determined, not by the officer, but by the jury, for, otherwise, the result would be to leave, entirely and exclusively, to the former, the right to determine when it exists. It would be a concession too dangerous to the community to meet the favor of any judicial tribunal.

The Court charged as claimed by the plaintiff in error in his second proposition, and, in so doing, correctly laid down the law. It cannot fail to be observed that it is in conflict with the position which the defendant (below) assumed in his first exception, for while this admits that lawful force is only such as is proper and sufficient for the immediate exigency, that implies the resort to any force, and the propriety of the extent is to be determined alone by the officer.

It is not every resistance that will justify an enormous battery. The force applied must have a due regard to the purpose it is to accomplish. It is allowed, when it may be necessary to overcome, by its interposition, the violence which is opposed to prevent the due exercise of the authority with which the officer is charged. If it proceeds beyond the limit of the necessity which originally permitted its use, it is no justification.

Our own cases of the *State* vs. *Wood*, 1 Bay., 351, and the *State* vs. *Lazarus*, 1 Mill's Con. Rep., 34, are in consistency with the doctrine laid down in 2 Bishop on Criminal Law, § 58. The authorities are there cited, and the writer thus concludes: " Finally, the force must be unlawful ; any violence, therefore, which, from the relations of the parties, or otherwise, one has the right to inflict on the other, as in the making of arrests by those lawfully empowered, and in the detaining of persons arrested, is not deemed an assault. This proposition assumes that the person goes no further in the use of force than the law allows ; for when one who, for instance, has the right to inflict personal chastisement on another under him, proceeds with it to an illegal extent, he becomes guilty of an

assault; and, generally, where the force is authorized, it must not exceed what is necessary, else the excess will be criminal."

The ground next assigned as error is not well founded. Although the intent is of the essence of the crime, yet that is to be inferred by the jury from the acts proved. How could it appear that the defendant (below) " acted in good faith, without malice, passion or ill will, but simply with intent to do his duty, and secure the prisoner, and not to injure him," except from a review of all the circumstances attending the transaction ? If this led the jury to conclude that the violence used did not exceed that which was necessary to overcome the resistance opposed, and was, therefore, proper, because, without it, the arrest could not be made, then the act complained of could not be referred either to malice, passion or ill will, but would be justified, by reason of the necessity of force, to effect the purpose required by the law.

It would not avail here to prove that he did not intend to commit an assault; the apparent original intention was to arrest; but if, in making it, he used more force than was sufficient and proper, from this the jury may construe a wrongful intent, at variance with that which is claimed to have existed at the inception.

The subject of intent is well comprised by Bishop, in the second volume of his work on criminal law, at Section 76, in the following language: " The wrong intent is a necessary element in a crime. What degree of mischief in the intent, or, in some respects, what form of evil intent must enter into the criminal assault, may not be capable of an exact statement; but it seems not to be always necessary there should be a specific determination to commit an assault or battery, or any other crime which, in law, includes an assault."

The motion is refused.

*Willard*, A. J., concurred.