# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jason Edwin Stoots, Petitioner.

Appellate Case No. 2023-000601

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Greenville County
Alex Kinlaw, Jr., Circuit Court Judge

---

Opinion No. 28253
Heard May 21, 2024 – Filed January 23, 2025

---

## REVERSED AND REMANDED

---

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson and Senior Assistant Attorney General Mark Reynolds Farthing, of Columbia, for Respondent.

---

**JUSTICE FEW:** Jason Edwin Stoots was convicted of second-degree domestic violence after an altercation with his wife. Stoots argues the trial court erred in refusing to charge the law of self-defense and accident. The court of appeals affirmed his conviction. We find no reversible error in refusing to charge the law of

accident but find reversible error in refusing to charge self-defense. We reverse the court of appeals and remand for a new trial.

## I.    Facts and Procedural History

In October 2018, Stoots picked up his wife Kimberly—from whom he had been living separately—and took her to the "drive-thru" at Taco Bell. Stoots testified at trial that while they waited in the line Kimberly became angry because she thought another woman was "tracking . . . radio signals" from an infusion pump Stoots has implanted in his side. He testified Kimberly started attacking him: "She started throwing her arms around me and started hitting me." Stoots stated: "I just grabbed both her arms, so, you know, it was like push and pull. And then the next thing I know, it was just—I felt my hand—the back side of my hand hit her right there." Stoots continued: "I was just holding her wrist and all that and it was going back and forth. It was accidental. . . . There was no intent whatsoever." He testified Kimberly began bleeding from her mouth after the altercation.

Kimberly testified to a different series of events. She testified the line was backed up when they arrived and she did not want to wait. This started an argument, and Stoots punched her. She stated: "I never touched him, not one time. Not once in that van did I touch him before he hit me."

Dr. Christopher Carey, the physician who treated Kimberly at the emergency room, testified that when Kimberly arrived, "she had swelling and bruising to the face. There was a cut to her inner lip, one of her upper teeth was displaced posteriorly, it was pushed back. And she had . . . a significant amount of bleeding from her tooth and from her inner mouth." Carey gave her medication to stop the bleeding and ordered a CT scan because, given the extent of her injuries, he was concerned she was bleeding inside her brain or had fractures in her face. The CT scan was negative.

The State charged Stoots with first-degree domestic violence. At the conclusion of the presentation of evidence at trial, Stoots requested the trial court instruct the jury on the law of self-defense and accident, but the trial court refused. The trial court explained it would not charge self-defense because of the size difference between Stoots and Kimberly and because Stoots "was in a better position to leave the altercation." The court did not explain its refusal to charge the law of accident. However, the trial court charged the jury the State must prove Stoots acted with criminal intent:

Now, in order to establish criminal liability in a case, a criminal case, the State must prove criminal intent. And criminal intent is a matter that must be determined by you from the facts as you heard the facts. There is no way to prove criminal intent in a mathematical certainty, so the law says that criminal intent may be inferred from the circumstances. It is not necessary to establish intent by direct evidence. Intent may be established by circumstantial evidence taking into account the circumstantial evidence that are at issue. Criminal intent is a mental state of conscious wrongdoing. It is up to you to determine what the defendant intended to do based on the circumstances shown to have existed.

The jury found Stoots guilty of the lesser-included offense of second-degree domestic violence. Stoots appealed based on the trial court's refusal to charge self-defense and accident, and the court of appeals affirmed. *State v. Stoots*, Op. No. 2023-UP-051 (S.C. Ct. App. filed Feb. 8, 2023). We granted Stoots's petition for a writ of certiorari.

## II.    Self-Defense

Stoots testified Kimberly was attacking him when he grabbed her arms to keep her from harming him. We have held many times that if there is any evidence from which the jury could reasonably conclude the defendant acted in self-defense, it is reversible error for the trial court to refuse to instruct the jury on the point. *See, e.g.*, *State v. Slater*, 373 S.C. 66, 70, 644 S.E.2d 50, 52 (2007) ("If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial judge's refusal to do so is reversible error." (citing *State v. Muller*, 282 S.C. 10, 10, 316 S.E.2d 409, 409 (1984))). Here, Stoots testified he grabbed Kimberly's arms to protect himself in response to her attack against him. We agree with Stoots the trial court was required to explain the law of self-defense to the jury.

The State argues the trial court was correct not to charge self-defense because self-defense is an intentional act and Stoots testified he struck Kimberly with "no intent whatsoever." The State asks us to focus only on Stoots's claim the punch was unintentional and disregard his testimony that he was being attacked and he intentionally grabbed Kimberly's arms to protect himself. We disagree that this is the correct approach. *See State v. White*, 425 S.C. 304, 312-13, 821 S.E.2d 523, 528

(Ct. App. 2018) (holding the trial court erred in refusing to charge self-defense even though the defendant testified he stabbed the victim unintentionally). If there is any evidence the defendant was acting in self-defense—which there is here—the trial court must charge it and let the jury sort out whether it believes the State's version of events. The State certainly could have argued to the jury it should not find Stoots was entitled to self-defense because he testified he acted unintentionally, but it was for the jury to decide that question, not the trial court.

Both the trial court and the court of appeals determined a self-defense charge was not required because Stoots's response was not proportional to Kimberly's attack. The trial court indicated Stoots's response was not proportional because he was much bigger than Kimberly. The court of appeals held "Stoots used excessive force towards Victim," and it cited a case about proportionality. *Stoots*, Op. No. 2023-UP-051 (citing *Golden v. State*, 1 S.C. 292, 296 (1870)). We agree proportionality is a critical concern in all non-deadly force cases.[1] Whether the defendant's response was proportional, however, is almost always a jury question. *See State v. McGowan*, 347 S.C. 618, 624, 557 S.E.2d 657, 660 (2001) ("[W]hether or not [the defendant's] response was proportional to the threatened arrest was a matter for the jury."). Because whether self-defense applied—particularly the proportionality of Stoots's response—was a question for the jury, it was error for the trial court and the court of appeals to rely on proportionality to justify the refusal to charge self-defense.

---

[1] *See State v. Wood*, 1 S.C.L. (1 Bay) 351, 352 (1794) ("[T]he degree of resistance ought to be in proportion to the nature of the injury offered; that is, that it be sufficient to ward off such injury, and no more."); *Golden*, 1 S.C. at 296 (stating, in the context of non-deadly force used in self-defense, "the degree of resistance ought to be in proportion to the nature of the injury offered"); *State v. Jones*, 133 S.C. 167, 178, 130 S.E. 747, 750 (1925) ("A person defending himself from an attack becomes liable as an aggressor, when the force employed is in excess of that which the law will tolerate in a given case for defensive purposes, and for the use of such excessive force he is liable both civilly and criminally." (citation omitted)), *overruled on other grounds by State v. Foust*, 325 S.C. 12, 479 S.E.2d 50 (1996); *State v. Francis*, 152 S.C. 17, 38, 149 S.E. 348, 356 (1929) (stating a person confronted with a "nonfelonious assault . . . may resist force with force, *but he is not authorized to go beyond the line of force proportioned to the character of the assault, or he in turn becomes a wrongdoer*." (citation omitted)); *State v. Williams*, 367 S.C. 192, 199, 624 S.E.2d 443, 446-47 (Ct. App. 2005) (holding an individual has the right to use force reasonably necessary to defend himself against an unlawful arrest).

The court of appeals applied the four traditional elements of self-defense that we have used to explain the defendant's right to respond with deadly force when he fears death or serious bodily injury. *See Stoots*, Op. No. 2023-UP-051 ("Stoots did not satisfy all four elements of self-defense . . . ."). The court of appeals stated, "one of the elements of self-defense is 'the defendant actually believed he was in imminent danger of sustaining serious bodily injury . . . .'" *Stoots*, Op. No. 2023-UP-051 (cleaned up) (quoting *State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011)). While the elements of self-defense when the defendant uses deadly force in response to fear of death or serious bodily injury are well-established,[2] our case law dealing with a defendant responding with non-deadly force to a lesser degree of fear is much less developed.

Stoots argues two of the traditional elements of self-defense are inapplicable or should be treated differently because he was responding with non-deadly force. Specifically, he argues that a belief in imminent danger of sustaining serious bodily injury is not required and there is no duty to retreat. We address each argument in turn.

First, Stoots argues he had a right to defend himself against the non-deadly blows from Kimberly even though he did not fear her attack would cause him serious bodily injury. We agree with Stoots that it makes little sense to require a person to believe serious bodily injury is imminent before resorting to non-deadly force in self-defense. The law requires a person fear imminent *serious* harm or death before

---

[2] The four traditional elements of self-defense in such a situation are:

> (1) The defendant was without fault in bringing on the difficulty; (2) The defendant actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger; (3) If the defense is based upon the defendant's actual belief of imminent danger, a reasonable prudent man of ordinary firmness and courage would have entertained the same belief; and (4) The defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*Dickey*, 394 S.C. at 499, 716 S.E.2d at 101 (cleaned up) (quoting *State v. Wiggins*, 330 S.C. 538, 545, 500 S.E.2d 489, 493 (1998)).

using deadly force to defend oneself because the use of defensive force is justified only to the extent such force is proportional to the threat the person faces. Where the provoking attack is less serious, a person may still be justified in responding, but only with proportional force. Thus, there is no requirement the defendant anticipate serious bodily injury or death before responding with non-deadly force in self-defense. *See City of Gaffney v. Putnam*, 197 S.C. 237, 243, 15 S.E.2d 130, 131 (1941) (stating, in a self-defense case where non-deadly force was used, "One acting in self-defense to repel an unlawful attack is not guilty of assault; he may repel force with force and continue his self-defense as long as the danger apparently continues"); *see also* William Shepard McAninch et al., *The Criminal Law of South Carolina* 541 (5th ed. 2007), (noting there are no South Carolina cases directly on point but a "thoughtful analysis reveals that . . . one need not anticipate *serious* bodily harm before responding with non-deadly force").

Second, Stoots argues there is no duty to retreat when responding with non-deadly force in self-defense. The trial court disagreed, basing its refusal to charge self-defense on Stoots's failure to abandon his vehicle in the Taco Bell drive-thru. We agree with the State when it said at oral argument, "If somebody is attacked in their car it doesn't make a whole lot of sense that we say you have to get out of your car in the drive-thru of Taco Bell and walk away." We go no further. We decline to establish a bright-line rule about the duty to retreat in all situations involving non-deadly self-defense. Rather, we believe the law requires a person facing non-deadly force to act reasonably in deciding whether it is necessary to respond with defensive force instead of stepping back or otherwise avoiding engagment with the adversary. To the extent the trial court found as a matter of law that Stoots was required to exit his own vehicle when his wife started hitting him in a fast-food drive-thru line instead of grabbing her arms to prevent his own injury, that was error.

## III. Accident

Stoots also argues the trial court erred by not charging the jury on the law of accident because there was evidence that while Stoots was acting in self-defense he unintentionally struck Kimberly and caused her injury. Stoots requested the trial court charge the three elements of accident initially outlined in *State v. Brown*, 205 S.C. 514, 32 S.E.2d 825 (1945). In *Brown*, we held that under the law of accident "no criminal responsibility attaches . . . [i]f it be shown that the killing was unintentional; that it was done while the perpetrator was engaged in a lawful enterprise, and was not the result of negligence." 205 S.C. at 521, 32 S.E.2d at 828. *Brown* was an involuntary manslaughter case in which the criminal intent the State was required to prove was negligence. In recent years, however, we have used the

same three elements to define the law of accident in homicide cases. *See, e.g.*, *State v. Commander*, 396 S.C. 254, 271, 721 S.E.2d 413, 422 (2011) (quoting *State v. Chatman*, 336 S.C. 149, 153, 519 S.E.2d 100, 102 (1999)). Charging the jury on those three elements has become standard when a defendant claims the "defense" of accident. *See, e.g.*, *State v. Owens*, 427 S.C. 325, 330, 333-34, 831 S.E.2d 126, 128, 130 (Ct. App. 2019), (listing the three elements and recommending a jury charge to explain them), *aff'd*, 433 S.C. 482, 860 S.E.2d 357 (2021). Under the authority of these cases, the trial court should have charged the jury on the law of accident using the three *Brown* elements.

The State argues, however, the trial court did not err by refusing to charge these three elements of accident because the court clearly instructed the jury the State must prove Stoots acted with criminal intent. We agree with the State. The trial court's charge on criminal intent required the State to prove Stoots acted with "a mental state of conscious wrongdoing," which in turn required the jury to find Stoots not guilty if the State failed to prove he intentionally injured Kimberly, or in other words, if it was an accident.[3] *See State v. McDaniel*, 68 S.C. 304, 317, 47 S.E. 384, 389 (1904) (stating, "a defense of homicide by accident denies that the killing was intentional").

To reconcile this case with the many other cases we have decided regarding the law of accident such as *Brown*, *Commander*, and *Owens*, it is important we consider the role the law of accident plays in the individual case. In *Brown*—the case where the three-element accident charge was born—the defendant was charged with involuntary manslaughter arising out of a head-on vehicle collision. 205 S.C. at 517, 32 S.E.2d at 826. In that context, the Court set forth the three elements quoted above. 205 S.C. at 521, 32 S.E.2d at 828. That statement was correct in *Brown* because the charge was involuntary manslaughter. The role of the three elements in that case was to differentiate between criminal negligence and an actual, innocent accident.

---

[3] In *United States v. Clemons*, 442 S.C. 670, 901 S.E.2d 280 (2024), this Court—on certification from the United States Court of Appeals for the Fourth Circuit—held a defendant may be convicted of the offense of domestic violence of a high and aggravated nature with a *mens rea* of recklessness as defined by the Model Penal Code. 442 S.C. at 678, 901 S.E.2d at 284. However, because the trial court charged the jury as it did on criminal intent, the "recklessness" question in *Clemons* is not at issue.

In many of the murder cases in which we have discussed whether the three elements should be charged as to the law of accident, the primary question was whether the defendant was acting lawfully and with due care when he armed himself in self-defense and claimed he later fired the weapon accidentally. For example, in *State v. Burriss*, 334 S.C. 256, 513 S.E.2d 104 (1999), we stated, "if the circumstances of this case show Appellant was entitled to arm himself in self-defense when the gun went off, he would be entitled to a charge of accident." 334 S.C. at 262, 513 S.E.2d at 108. We explained *Burriss* in *Slater*:

> In *Burriss*, this Court discussed the use of an accident defense where the defendant unlawfully possessed a gun. Burriss maintained that he was lawfully armed in self-defense when the gun accidentally fired. Because a defendant must be acting lawfully to use the defense of accident, we discussed whether a person in unlawful possession of a weapon may lawfully arm himself in self-defense. Clarifying an ambiguity in this Court's prior case law, we noted that where the defendant's unlawful possession of a weapon is merely incidental to the defendant's lawful act of arming himself in self-defense, the unlawful possession of the weapon will not prevent the use of an accident defense. We further explained, however, that the unlawful possession of a firearm can, under some circumstances, constitute an unlawful activity so as to preclude an accident defense if the weapon is the proximate cause of the killing.

373 S.C. at 71, 644 S.E.2d at 53 (citations omitted).

In homicide cases like *Burriss*, *Slater*, *Owens*, and *Commander*, the role of the law of accident includes the jury's analysis of how accident relates to self-defense, and whether the defendant lawfully and non-negligently armed himself in self-defense can be determinative of whether he is entitled to a jury charge on the law of accident. In those cases, for that reason, we held it was necessary to charge the three *Brown* elements Stoots requested in this case.

In this case, however, two of the three *Brown* elements are inapplicable. To illustrate this point, under the trial court's correct charge that the State must prove "a mental state of conscious wrongdoing," if Stoots did not intend to injure Kimberly he would be not guilty, and it would not matter whether he acted lawfully or with due care.

Under Stoots's requested charge of all three elements, on the other hand, the State would have been enabled to prove him guilty *even if* he acted unintentionally by proving he acted unlawfully or without due care. The requested charge would have made it possible for the State to obtain a conviction without proving the necessary intentional act. Thus, the trial court's jury charge on criminal intent squarely met the role that accident should play in this case, and there was no error.[4]

This is not to say that a narrower charge on the law of accident should not have been given in this case. As with self-defense, the trial court must tailor its jury instruction on the law of accident depending on the crime charged and the specific facts and circumstances of the case. *See State v. Fuller*, 297 S.C. 440, 443, 377 S.E.2d 328, 330 (1989) ("In charging self-defense, we instruct the trial court to consider the facts and circumstances of the case at bar in order to fashion an appropriate charge."). An appropriate charge on the law of accident as it applies in this case, for example, may have been something like this:

> The defendant has asserted the defense of accident. This is not technically a defense, but rather is to simply assert that the State failed to prove the necessary criminal intent. Thus, I remind you that the State must prove beyond a reasonable doubt that the defendant acted with criminal intent, which means—as I told you earlier—the State must prove the defendant acted with a mental state of conscious wrongdoing, or in other words, that he committed an intentional act which he knew was likely to cause injury.

We do not intend to mandate the manner in which trial courts must charge the law of accident or any other law; we simply encourage trial courts to do so carefully and in a manner that actually addresses the issues at stake in the individual case. On the

---

[4] We recognize the criminal intent charge given by the trial court was not without flaws. However, the issue on appeal here is not the flawlessness of the criminal intent charge. We are required to consider the charge as a whole and determine whether it sufficiently covers the law applicable to the case. *See State v. Burton*, 302 S.C. 494, 498, 397 S.E.2d 90, 92 (1990) ("The charge is sufficient if, when considered as a whole, it covers the law applicable to the case." (citing *State v. Rabon*, 275 S.C. 459, 462, 272 S.E.2d 634, 636 (1980)). We can find no reversible error in the criminal intent charge given.

facts of this case, if Stoots had requested a charge such as the one set forth immediately above, it would have been error to refuse it.  As to the request that was made—the *Brown* elements—the trial court's charge on criminal intent covered the only portion of that charge actually applicable to this case and, thus, there was no error.

### IV.   Conclusion

In conclusion, the trial court erred by refusing to charge self-defense.  We reverse the court of appeals and remand to the court of general sessions for a new trial.

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., JAMES, HILL, JJ., and Acting Justice Donald W. Beatty, concur.**