520 S.E.2d 319

**The STATE, Respondent,**

**v.**

**Lavar K. BRYANT, Appellant.**

**No. 24988.**

Supreme Court of South Carolina.

Heard May 11, 1999.

Decided Aug. 16, 1999.

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General G. Robert Deloach, III, and Solicitor Warren B. Giese, all of Columbia, for respondent.

BURNETT, Justice:

Appellant appeals his conviction of murder and his sentence of life imprisonment. We affirm.

## FACTS

Before noon on August 4, 1995, Mike Suber (Suber) left his office at the Department of Health and Environmental Control (DHEC) in Columbia. Suber's body was discovered in the DHEC parking lot near his personal vehicle around 1:00 p.m. that same day. Because Suber's personal items, including his wallet, were scattered around him, SLED agent Kelvin Crimminger concluded a struggle occurred before Suber was killed.

Lying on the ground near the driver's side of Suber's vehicle, police investigators found a black wig, a knife and a screwdriver. Appellant's fingerprints were found on Suber's vehicle. After his fingerprints identified him as a suspect, police investigators searched appellant's home. The police found a pair of athletic shoes with a tread pattern consistent with a footprint found at the murder scene.

The words "Metro Mike f- - - your Mamma" had been etched on the rear of Suber's vehicle. Suber's wife testified these words were not on the vehicle that morning. Agent Crimminger concluded the scratches were freshly made. Juvenile corrections officer Rodney Muller testified offenders from Columbia used the term "Metro" to identify themselves. Further, Muller testified appellant wrote "Metro" on a shirt while he was incarcerated with the Department of Juvenile Justice.

Pathologist Sally Harding, who conducted the autopsy, found three stab wounds in Suber's chest that were consistent with the pattern of a flat head screwdriver. Two of the wounds were superficial. However, the third stab wound penetrated Suber's aorta from a downward angle causing fluid pressure to build up around Suber's heart until it stopped beating. Harding further testified she found scratch wounds on Suber's forearms that were consistent with a screwdriver. Harding testified Suber would have been conscious and capable of calling for help for about fifteen minutes before death. Based upon the sand embedded in Suber's face and his failure to call for help, Harding concluded someone held Suber down before he died.

On August 5, 1995, appellant surrendered to the police. SLED agents Tommy Robertson and Arthur Myers and Columbia Police Detective Walter Bales interviewed appellant at

the police station. After appellant waived his right to remain silent, appellant initially denied any knowledge about Suber's murder. Columbia Police Chief Charles Austin then asked appellant if he wanted to pray. Appellant agreed to pray with Chief Austin. After a short prayer, appellant began sobbing and said "I didn't mean to do it." Detective Bales obtained a second waiver of appellant's rights and appellant gave several inconsistent statements concerning the incident.

In appellant's first statement, he admitted Suber approached him as he was breaking into Suber's vehicle. Suber went to the rear of the vehicle and returned with a screwdriver in one hand and a steak knife in the other hand. According to appellant, Suber dropped the knife during the ensuing struggle. Appellant claimed he took the screwdriver away from Suber. After Suber was disarmed, appellant swung the screwdriver at Suber and stabbed him.

Appellant then modified his statement claiming he obtained the screwdriver and knife from Suber's vehicle. Appellant modified his statement again claiming he brought the knife with him. As Suber approached, appellant pulled out the knife. Suber then ran to the vehicle and got the screwdriver.

Appellant then asserted he threw the knife down prior to the struggle because he did not want to fight. However, appellant did not think Suber saw him discard the knife. Appellant then "jumped" Suber as Suber was backing out of the passenger door with the screwdriver in his hand. Suber hit appellant and appellant kicked Suber causing Suber to fall and drop the screwdriver. Appellant picked up the screwdriver and stabbed Suber three or four times when Suber came toward him.

Appellant gave a final signed written statement describing the incident.

When I went out there I went by the truck and searched it. I found a wallet and checkbook. I put them in my back pocket. I came with the knife. When I was standin' in front of the truck, he came down and asked what I was doin'. I said nothing. He began looking in the truck and I had the knife in my pocket with the blade pointing up. I took the knife out and dropped it on the ground because I didn't want it poking me in the side if we fought. When the

man was backing away from the passenger door he had a screwdriver in his hand. I was afraid so I grabbed the man and we started fighting. When I kicked him he fell down and we were fighting on the ground.

Some way the screwdriver came loose and I picked it up and stood up. The man got up and came at me. I stabbed at him 3 or 4 times and he started gasping. I thought he might die so I dropped the screwdriver and ran away.

Appellant requested an instruction on self-defense based on the evidence that he had withdrawn from the "initial difficulty" by discarding his knife. The solicitor argued appellant could not claim self-defense because he was initially at fault. The trial judge refused the requested charge because appellant brought about the initial difficulty with Suber and did not retreat.

## *ISSUE*

Did the trial judge err in refusing to charge self-defense?

## *DISCUSSION*

Appellant claims the trial judge erred by refusing to charge self-defense. Based on his statements, appellant argues the jury could have found, although he was the initial aggressor, his right to self-defense was restored when he withdrew from the conflict and communicated his intent to do so before Suber attacked him with deadly force. We disagree.

A self-defense charge is not required unless the evidence supports it. *State v. Goodson*, 312 S.C. 278, 440 S.E.2d 370 (1994). To establish self-defense in South Carolina, four elements must be present. First, the defendant must be without fault in bringing on the difficulty. Second, the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury. Third, if his defense is based upon his belief of imminent danger, a reasonably prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant was actually in imminent danger, the circumstances were such as would war-

rant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life. Fourth, the defendant had no other probable means of avoiding the danger. *Id.*

■ "[O]ne who provokes or initiates an assault cannot escape criminal liability by invoking self defense...." Ferdinand S. Tinio, *Comment Note: Withdrawal, After Provocation of Conflict, As Reviving Right Of Self-Defense*, 55 A.L.R.3d 1000, 1003 (1974). Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for a homicide. 40 Am. Jur.2d *Homicide* § 149 (1999). "[A] robber, who is met with such violent resistance by his victim that he has no opportunity to convince [the] victim that he has abandoned his criminal intentions and only wants to withdraw, may not claim self defense if he injures or kills his victim." 55 A.L.R.3d at 1003–04; *see also United States v. Thomas*, 34 F.3d 44 (2d Cir.1994) (one who commits or attempts a robbery armed with deadly force and kills the intended victim when victim responds with force may not avail himself of the defense of self-defense); *People v. Couch*, 436 Mich. 414, 461 N.W.2d 683 (1990) (a robber or other wrongdoer engaged in felonious conduct has no privilege of self-defense); *Stiles v. State*, 829 P.2d 984 (Okla.Crim.App.1992) (one who kills while committing armed robbery is an aggressor and an aggressor is not entitled to a claim of self-defense).

■ "[I]f, after commencing the assault, the aggressor withdraws in good faith from the conflict and announces in some way to his adversary his intention to retire, he is restored to his right of self defense...." 55 A.L.R.3d at 1003. One's right to self-defense is restored after a withdrawal from the initial difficulty with the victim if that withdrawal is communicated to the victim by word or act. *State v. Graham*, 260 S.C. 449, 196 S.E.2d 495 (1973).

Appellant's statements fail to establish the elements of self-defense entitling appellant to a self-defense charge. No question of fact for the jury is created on this issue. Appellant concedes he brought on the initial difficulty by breaking into Suber's vehicle. Even if appellant subjectively meant to with-

draw from the conflict he failed to communicate this intent to Suber. Although in one statement appellant claimed he dropped the knife because he did not want to fight, appellant admitted Suber did not see him drop the knife. Thus, Suber was unaware of appellant's intent to withdraw from the conflict. Further, appellant never told Suber he was leaving and did not want to fight. If appellant truly intended to withdraw he could have easily left the open parking lot. *See Macias v. State*, 36 Ariz. 140, 283 P. 711 (1929) (a man who is a trespasser and in a place where he has no right to be may not stand his ground and slay his assailant and still claim self-defense, when by leaving such place he might avoid the conflict). Because appellant failed to effectively communicate to Suber his intent to withdraw from the conflict, appellant's right to use self-defense was never restored. Appellant, as the aggressor, remained responsible for bringing on the difficulty.

Accordingly, appellant was not entitled to a self-defense charge and the trial judge correctly refused the charge.

**AFFIRMED.**

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.