644 S.E.2d 50

**The STATE, Petitioner,**

v.

**Lord Byron SLATER, Respondent.**

**No. 26299.**

Supreme Court of South Carolina.

Heard March 7, 2007.

Decided April 9, 2007.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, and Solicitor Ralph E. Hoisington, of Charleston, for Petitioner.

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of the South Carolina Commission on Indigent Defense Division of Appellate Defense, of Columbia, for Respondent.

Chief Justice TOAL.

Lord Byron Slater ("Slater") was convicted of murder and possession of a firearm during the commission of a violent

crime. Slater appealed his conviction and sentence to the court of appeals alleging that the trial court committed reversible error in failing to charge the jury on self-defense. The court of appeals reversed Slater's conviction and remanded the case for a new trial. *See State v. Slater*, 360 S.C. 487, 602 S.E.2d 90 (2004). The State appealed and this Court granted a Writ of Certiorari to review the court of appeals' decision. We reverse.

### FACTUAL / PROCEDURAL BACKGROUND

Slater attended a step show at North Charleston High School in February 2001. After the step show ended, Slater went outside and began talking with some of the girls at the school. During this time, Slater noticed a gathering around a truck. Slater went to his car, retrieved a gun, and walked toward the truck. According to Slater, he initially retrieved his gun with the intention of shooting it into the air to cause a commotion. Slater alleges, however, that he changed his mind and returned to his car where three of his friends were waiting for him. Moments later, Slater noticed that another disturbance was taking place in an adjacent parking lot. Carrying his gun with him, Slater went to the adjacent parking lot to investigate.

In the second parking lot, a robbery was unfolding where the victim was on the ground being assaulted by five men. Slater knew neither the victim nor his attackers. Slater testified that he walked up to the robbery and surprised one of the attackers. According to Slater's testimony, the man turned around and pointed a gun toward him. Slater quickly turned away from the man and started running back toward his car. Slater also testified that as he ran, he heard a gunshot and responded by shooting his own gun behind him. As Slater and his friends left the scene, Slater continued shooting in the air as the car pulled away and the victim lay dying on the ground from several gunshot wounds.

Slater and his three friends drove to Slater's house, where Slater left the gun. The four then went back to the parking lot where the shooting had occurred. On the way, the police stopped them and searched the car but did not find a weapon.

Early the next morning, detectives from the city of North Charleston went to Slater's residence to arrest him for the murder of the victim. Following the arrest, they obtained a search warrant for Slater's house. The detectives recovered various ammunitions from Slater's yard and from inside his house, including two guns, bullets, and shell casings.

At the police station, Slater told the police that he had not shot anyone. However, a ballistics expert testified at trial that the bullets which fatally wounded the victim came from Slater's gun, as did the ones retrieved from the crime scene. Additionally, numerous witnesses placed Slater at the crime scene with a gun. At trial, Slater himself admitted to shooting his gun, but insisted that he did not mean to shoot anyone.

Before the case was submitted to the jury, Slater requested a jury charge on the law of self-defense. The trial court declined Slater's request on the grounds that the evidence did not support the charge. Despite the trial court's refusal to include the jury charge on self-defense, the court included a manslaughter option in the jury charge. The jury convicted Slater of murder and possession of a firearm during the commission of a violent crime, and Slater appealed.

At the court of appeals, Slater alleged that the trial court erred in failing to charge the jury on the law of self-defense. The court of appeals agreed and reversed Slater's conviction and sentence. We granted the State's Writ of Certiorari, and the State raises the following issue for review:

Did the court of appeals err in finding that Slater was entitled to a charge on self-defense?

## LAW / ANALYSIS

The State argues that the court of appeals erred in finding that Slater was entitled to a self-defense charge. We agree.

A self-defense charge is not required unless it is supported by the evidence. *State v. Goodson*, 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994). To establish self-defense in South Carolina, four elements must be present: (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must

have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger. *State v. Bryant*, 336 S.C. 340, 344–45, 520 S.E.2d 319, 321–22 (1999). "If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial judge's refusal to do so is reversible error." *State v. Muller*, 282 S.C. 10, 10, 316 S.E.2d 409, 409 (1984).

■■ In the instant case, Slater fails to meet the first requirement for the self-defense charge: specifically, Slater was not without fault in bringing on the difficulty. "Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars the right to assert self-defense." *Bryant*, 336 S.C. at 345, 520 S.E.2d at 322. In the instant case, the record clearly reflects that Slater approached an altercation that was already underway with a loaded weapon by his side. Such activity could be reasonably calculated to bring the difficulty that arose in this case.

Additionally, the uncontradicted evidence illustrates that Slater acted in violation of the law by carrying a weapon. The court of appeals relied on *State v. Burriss*, 334 S.C. 256, 513 S.E.2d 104 (1999), to support its finding that Slater's unlawful possession of a weapon did not foreclose the possibility of asserting self-defense. Although we agree that "the mere unlawful possession of a firearm, with nothing more, does not automatically bar a self-defense charge," we reject the position that the unlawful possession of a weapon could never constitute an unlawful activity which would preclude the assertion of self-defense.

*Burriss,* which deals with the defense of accident, is instructive in the instant case. In *Burriss,* this Court discussed the use of an accident defense where the defendant unlawfully possessed a gun. Burriss maintained that he was lawfully armed in self-defense when the gun accidentally fired. Id. at 259, 513 S.E.2d at 106. Because a defendant must be acting lawfully to use the defense of accident, we discussed whether a person in unlawful possession of a weapon may lawfully arm himself in self-defense. Id. at 262, 513 S.E.2d at 108. Clarifying an ambiguity in this Court's prior case law, we noted that where the defendant's unlawful possession of a weapon is merely incidental to the defendant's lawful act of arming himself in self-defense, the unlawful possession of the weapon will not prevent the use of an accident defense. Id. at 262 n. 5, 513 S.E.2d at 108 n. 5. We further explained, however, that the unlawful possession of a firearm can, under some circumstances, constitute an unlawful activity so as to preclude an accident defense if the weapon is the proximate cause of the killing. Id. Although *Burriss* takes the additional step of applying the rule in the context of accident, the analysis is equally applicable in determining if a defendant in unlawful possession of a weapon is entitled to a charge on self-defense.

Here, Slater's unlawful possession of the weapon was the proximate cause of the homicide. Slater was not merely in unlawful possession of a weapon; he carried the cocked weapon, in open view, into an already violent attack in which he had no prior involvement. Slater's actions, including the unlawful possession of the weapon, proximately caused the exchange of gunfire, and ultimately the death of the victim. Consequently, Slater fails to meet the requirement that he be without fault in bringing on the difficulty and may not avail himself of a charge on self-defense.

Accordingly, the trial court correctly found that Slater was not entitled to a self-defense charge and the court of appeals erred in reversing Slater's conviction on this ground.

## Conclusion

For the foregoing reasons, we reverse the court of appeals' decision reversing the trial court's exclusion of a jury charge on the law of self-defense.

MOORE and BURNETT, JJ., concur.

PLEICONES, J., concurring in result only.