752 S.E.2d 795

**The STATE, Respondent,**

v.

**Thomas SMITH, Appellant.**

**Appellate Case No. 2010–178386.**

**No. 5167.**

Court of Appeals of South Carolina.

Heard Dec. 10, 2012.

Decided Aug. 28, 2013.

Withdrawn, Substituted and Refiled Nov. 27, 2013.

Rehearing Denied Nov. 27, 2013.

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., and Assistant Attorney General Julie Kate Keeney, all of Columbia, and Solicitor Barry Barnette, of Spartanburg, for Respondent.

SHORT, J.

Thomas Smith appeals his convictions for voluntary manslaughter, possession with intent to distribute marijuana within a half-mile radius of a school, and possession with intent to distribute marijuana. He argues the trial court erred in denying his motion for a directed verdict because the undisputed evidence showed he shot the victim in self-defense. We affirm.

**FACTS**

Around midnight on March 12, 2009, Smith and three of his friends, Rocky Hadden, Ashley Smith, and James Ervin, arranged to sell marijuana to a person they had never met before named Markee Guest (the victim), and all four rode together in a small car to meet the victim. Hadden testified he drove the car, which belonged to Ashley, and Ashley was in the passenger seat. Smith sat in the backseat on the passenger's side, and Ervin was in the backseat on the driver's side. When the group met up with the victim near an elementary school, he had another person with him they did not know named Ronald Lipscomb. It was cold outside, and there was conflicting testimony as to whether Smith invited the victim and Lipscomb to get into the back seat of the car or whether they requested to get in. Regardless, the two got into the back seat, and Smith measured the marijuana.[1] The victim or

---

1. Hadden testified Smith slid over from the passenger's side towards the driver's side when the victim and Lipscomb got into the car through

Lipscomb asked for change for a $100 bill. When Ashley responded she did not have change, Lipscomb pulled out a gun, pointed it at Smith's temple, and said to "give him everything." Hadden testified that within seconds of Lipscomb pulling the gun, he ducked his head and heard the first of multiple gunshots. After the shots were fired, Hadden said Smith got out of the car and left. Hadden did not see anything in Smith's hands and did not know he had a gun. Ervin managed to escape and run away when he saw Lipscomb pull out the gun. Lipscomb climbed out the open window. Hadden drove away with Ashley, stopped the car on Railroad Avenue, and hid the marijuana under the railroad tracks.

Officer Tracy Medley responded to a call about gunshots, and when he arrived at the scene, he found two people laying in the road. The victim was deceased, and Lipscomb was moving. The victim was missing one shoe, and Lipscomb was missing both of his shoes. Officers found four to five shell casings at the scene.[2] That same night, Officer Matt Earls responded to a 911 call about a suspicious vehicle. When he arrived at Railroad Avenue, he observed a vehicle on the side of the road and three people outside of the vehicle. Upon approaching the vehicle, he saw a silver handgun in plain view on the floorboard behind the driver's seat.[3] He also saw one bullet hole in the sunroof and one in the back passenger-side door. Captain Mike Segina testified he found three shoes in the passenger-side rear floorboard. Detective Ronnie Anderson testified the three people present at the vehicle were Hadden, Ashley Smith, and Ervin. Detective Anderson's police dog alerted him to marijuana near the railroad tracks. Officers did not find another gun.

Officer Alex Hammond went to Smith's house to look for him and found him hiding under a bed. Smith was arrested

---

the rear passenger door. Therefore, Ervin was against the rear door on the driver's side, Smith was next to him, the victim was next to Smith, and Lipscomb was against the rear door on the passenger's side.

2. Captain Mike Segina testified the four shell casings found at the scene, and the one found under the driver's seat, were all 9mm Rugers.

3. Captain Segina testified the gun was a Raven Model MP–25. He also found a magazine with five 0.25 caliber rounds in it.

for murder, possession with intent to distribute marijuana near a school and/or playground, and possession with intent to distribute marijuana. Detective Jonathan Blackwell testified he interviewed Smith at the police department on March 13, 2009, at 4:15 in the morning. Detective Blackwell took a verbal and written statement from Smith.[4] In the statement, Smith said:

> On March 13th of 2009, a little after midnight, myself, Thomas Michael Smith, Rocky Hadden, James Ervin "Bug", and Ashley Smith, got into Ashley's black Mitsubishi Galant to go meet somebody at Mary Bramlett. We were going there to meet this guy to sell him two ounces of marijuana. Rocky was driving the car. Ashley was in the front passenger seat. Bug [Ervin] was in the back seat behind Rocky. And, I was behind Ashley. We met two black males at the alley beside Mary Bramlett. I showed them the pot, and they said they wanted it and asked to get in the car. The two black males got into the back seat. The black male sitting beside me had on a black hoodie [the victim], and the black male sitting beside him against the door was wearing a red coat [Lipscomb]. We pulled to the other end of the alley to the stop sign. I asked them if they wanted it or not. And, they said yeah and started digging in their pockets to find money. Then the guy in the red coat [Lipscomb] pulled out a gun and reached around the guy in between us [the victim] and stuck the gun against my head. He tells me—he tells me to give him my money and everything I got. I told him no, quit playing. He put the gun against my head again and he said, "I'm not joking, don't move." One of the black males grabbed me and pulled me towards them. That's when I pulled my gun out. They were still pointing the gun at me, so I started shooting. My first three shots went into the roof of the car. My last two shots I was falling out of the car, so I don't know where they went. The guy in the red [Lipscomb] jumped and started rolling around on the ground. The guy in the black coat [the victim] just sat in the back seat moaning and wouldn't get out of the car. So I walked around to the passenger side and pulled him out. I left him in the road and I jumped back into the car and we drove to Railroad

---

4. Smith did not testify at his trial.

Avenue to Jacob's house. When we drove to Railroad Avenue the only people in the car was me, Rocky [Hadden] and Ashley [Smith]. Bug [Ervin] got out and ran when he saw the gun. When we got to Railroad Avenue I jumped out and I ran to [left blank]. While I was running I threw the gun and the clip in two different directions. The gun was a Ruger 9mm.

Officer Blackwell testified Smith's statement was that he started firing his gun in an effort to retreat from the car on the driver's side. Captain Segina testified the gun he found in the car had five bullets in the magazine and one in the chamber. Suzanne Cromer from the State Law Enforcement Division (SLED) testified the gun was not functioning properly and did not fire every time the trigger was pulled.

A trial was held on November 16 and 17, 2010. At the close of the State's case, Smith moved for directed verdict on the charge of murder, arguing he fired his gun in self-defense. The court denied the motion with no explanation. The court instructed the jury on self-defense, in addition to the other charges. The jury found Smith guilty of voluntary manslaughter, possession with intent to distribute marijuana near a school and/or playground, and possession with intent to distribute marijuana. The court sentenced Smith to twenty-five years imprisonment for voluntary manslaughter, ten years for possession with intent to distribute marijuana near a school and/or playground, and five years for possession with intent to distribute marijuana. This appeal followed.

## STANDARD OF REVIEW

In considering a directed verdict motion, the trial court is concerned with the existence of evidence rather than its weight. *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998). "[A] trial judge is not required to find that the evidence infers guilt to the exclusion of any other reasonable hypothesis." *State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004). "A defendant is entitled to a directed verdict when the state fails to produce evidence of the offense charged." *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). "However, when a defendant claims self-defense, the State is required to disprove the elements of self-defense beyond a reasonable doubt." *State v. Dickey*, 394 S.C. 491,

499, 716 S.E.2d 97, 101 (2011). "In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State, and if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury." *Kelsey,* 331 S.C. at 62, 502 S.E.2d at 69.

## LAW/ANALYSIS

Smith argues the trial court erred in denying his motion for directed verdict because the undisputed evidence showed he shot the victim in self-defense. Specifically, Smith asserts the following evidence supported his claim of self-defense: (1) he was one of four passengers in the backseat of a small car; (2) he fired his gun only after another passenger in the backseat, who was acting in concert with the victim, pressed a gun to his temple and ordered him not to move; and (3) he was unable to escape the vehicle. We disagree.

In *State v. Wiggins,* 330 S.C. 538, 545, 500 S.E.2d 489, 493 (1998), our supreme court provided four elements a court should use when determining whether a person was justified in using deadly force in self-defense:

(1) The defendant was without fault in bringing on the difficulty;

(2) The defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger;

(3) If the defense is based upon the defendant's actual belief of imminent danger, a reasonable prudent man of ordinary firmness and courage would have entertained the same belief. If the defendant actually was in imminent danger, the circumstances were such as would warrant a man of ordinary prudence, firmness and courage to strike the fatal blow in order to save himself from serious bodily harm or losing his own life; and

(4) The defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

In *Wiggins,* our supreme court held the trial judge properly denied a directed verdict of acquittal for murder because the

State presented sufficient evidence to create a jury issue regarding whether Appellant was acting in self-defense or was guilty of voluntary manslaughter. 330 S.C. at 548, 500 S.E.2d at 495. Further, the court noted, " '[r]eversal of a conviction because of the trial court's refusing to give a directed verdict on the ground of self-defense is rare.' " *Id.* at 545, 500 S.E.2d at 493 (quoting William S. McAninch & W. Gaston Fairey, *The Criminal Law of South Carolina* 483 (3d ed.1996) (Supp.1997 at 77)).

Smith argues the State did not present any evidence to prove he was at fault in bringing on the difficulty. He asserts he did not deliberately arm himself in anticipation of a conflict that evening, and Lipscomb pulled his gun first without any provocation or act of aggression by anyone, including himself.

In *State v. Dickey*, 394 S.C. 491, 500, 716 S.E.2d 97, 101 (2011), our supreme court found the State did not produce any evidence to contradict Dickey's testimony he routinely carried his concealed weapon and did not deliberately arm himself in anticipation of a conflict that evening. Therefore, the supreme court determined the State did not carry its burden to disprove the elements of self-defense beyond a reasonable doubt, and Dickey was entitled to a directed verdict of acquittal on the ground of self-defense. *Id.* at 498–500, 716 S.E.2d at 100–01. We find *Dickey* distinguishable because Dickey was carrying his gun while performing his job as a security guard; although he was not required to carry a loaded gun by his employer, he had a valid concealed weapons permit for his gun; he was acting in good faith in removing the trespassers from the building at the request of a tenant in the course of his employment as a security guard; and Dickey was not brandishing his gun and pulled it only when the trespassers began advancing towards him in an aggressive manner.[5] *Id.* at 495–500, 716 S.E.2d at 98–102.

In contrast, in the present case, the State presented evidence Smith was not acting in good faith at the time of the

---

5. The court noted that "[h]ad [Dickey] accompanied the ejection with threatening words or posture, a jury question may have arisen." *Id.* at 500, 716 S.E.2d at 102. "However, under these facts, we find [Dickey] was exercising his right to eject trespassers in good faith and, as a matter of law, he was without fault in bringing about the difficulty." *Id.* at 501, 716 S.E.2d at 102.

shooting in that he took a gun to a drug deal and violated the law by attempting to sell illegal drugs.[6] We find going to a drug deal while armed with a deadly weapon is evidence of fault in bringing on the difficulty, which is a question of fact that must be determined by the jury. Thus, whether Smith armed himself in anticipation of a conflict was an issue for the jury. *See State v. Bryant*, 336 S.C. 340, 345, 520 S.E.2d 319, 322 (1999) ("Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for a homicide."); *State v. Jackson*, 227 S.C. 271, 278, 87 S.E.2d 681, 684 (1955) ("[O]ne cannot through his own fault bring on a difficulty and then claim the right of self-defense...."); *cf. State v. Slater*, 373 S.C. 66, 71, 644 S.E.2d 50, 53 (2007) (holding the trial court correctly found Slater was not entitled to a self-defense charge because his actions, including the unlawful possession of the weapon, proximately caused the exchange of gunfire and ultimately the death of the victim, and any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars the right to assert self-defense); *id.* at 70, 644 S.E.2d at 52–53 (stating the mere unlawful possession of a firearm, with nothing more, does not automatically bar a self-defense charge, but rejecting the position that the unlawful possession of a weapon could never constitute an unlawful activity that would preclude the assertion of self-defense).

Therefore, we find the State carried its burden to disprove the elements of self-defense beyond a reasonable doubt, and the trial judge properly denied Smith's motion for directed verdict based on self-defense. *See Wiggins*, 330 S.C. at 548, 500 S.E.2d at 495 (finding the trial judge properly denied a directed verdict of acquittal because the State presented sufficient evidence to create a jury issue regarding whether Appellant was acting in self-defense or was guilty of voluntary manslaughter); *State v. Strickland*, 389 S.C. 210, 214, 697 S.E.2d 681, 683 (Ct.App.2010) ("If the State provides evidence

---

6. We further note Smith ran away from the scene of the crime after the shooting. *See State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 266 (2006) ("Flight from prosecution is admissible as guilt.").

sufficient to negate a defendant's claim of self-defense, a motion for directed verdict should be denied.").

**CONCLUSION**

Accordingly, the trial court is

**AFFIRMED.**

KONDUROS, J., concurs.

LOCKEMY, J., concurs in a separate opinion.

LOCKEMY, J., concurring in a separate opinion.

I concur in the majority's decision to affirm Smith's conviction. However, I do not believe a jury issue existed as to whether Smith brought on the difficulty which led to the shooting. The issue of self-defense and Smith's right to avail himself of that defense was a matter of law, not fact. The facts in this case did not support an instruction on self-defense as a matter of law because the first element of self-defense, being without fault in bringing on the difficulty, was not present. Therefore, the trial court's denial of Smith's directed verdict motion on the ground of self-defense was not error.

To support his self-defense claim, Smith cites *State v. Starnes*, 340 S.C. 312, 531 S.E.2d 907 (2000). In *Starnes*, two shootings took place in a home where there was disputed testimony that a drug transaction was involved. 340 S.C. at 316–18, 531 S.E.2d at 910–11. Our supreme court found the facts presented entitled Starnes to a self-defense charge in regard to both shootings. *Id.* at 322, 531 S.E.2d at 913.

However, the facts in *Starnes* are very different from those in this case. In *Starnes*, the testimony centered on anger regarding an unpaid or late paid debt, victims bent on mischief, and a shooting to defend others. 340 S.C. at 316–18, 531 S.E.2d at 910–11. The purported drug transaction was only one element, and one could argue it had dissipated as a reason for the shootings. Here, Smith willingly brought a loaded weapon to the scene solely for the purpose of furthering his efforts to conduct the illegal sale of drugs.

I believe the reasoning in *State v. Slater*, 373 S.C. 66, 644 S.E.2d 50 (2007), is more akin to the facts of this case. In *Slater*, Slater willfully entered into an altercation in progress

with a loaded weapon. 373 S.C. at 68, 644 S.E.2d at 51. After shots were fired, Slater returned fire killing the victim. *Id.* Our supreme court reversed this court and agreed with the trial court that Slater was not entitled to a self-defense charge. *Id.* at 71, 644 S.E.2d at 53. The court stated, "[a]ny act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars the right to assert self-defense." *Id.* at 70, 644 S.E.2d at 52 (quoting *State v. Bryant,* 336 S.C. 340, 345, 520 S.E.2d 319, 322 (1999)). In other courts, this reasoning has been applied to deny the accused the right to a self-defense charge. In *United States v. Desinor,* 525 F.3d 193 (2d Cir. 2008), the Second Circuit determined the defendants were not entitled to self-defense charges for killing an unintended victim. The Second Circuit held, "[i]t has long been accepted that one cannot support a claim of self-defense by a self-generated necessity to kill." *Desinor,* 525 F.3d at 198 (quoting *United States v. Thomas,* 34 F.3d 44, 48 (2d Cir.1994)).

At the time of the shooting, Smith was engaged in the crime of selling illegal drugs. This activity, in addition to damaging the lives of untold numbers of people, also results in shootings and deaths on a very frequent basis. Smith's decision to bring a loaded weapon to the drug deal clearly shows his knowledge of the danger of the situation. His criminal conduct brought on the necessity to take the life of another. Smith created a situation fraught with peril. He cannot be excused for the violence that logically and tragically often occurs when engaging in such conduct, nor can he claim he did not anticipate the high probability of such violence.

Therefore, I would affirm the denial of the directed verdict motion on the ground that Smith was not entitled under the facts of this case to the defense of self-defense. The self-defense charge, although not warranted in my view, was not objected to by either party nor has it been argued to this court that it was prejudicial to Smith. Thus, Smith's conviction should be affirmed.