# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Jalann Lee Williams, Petitioner.

Appellate Case No. 2017-000727

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Charleston County
R. Lawton McIntosh, Circuit Court Judge

---

Opinion No. 27895
Heard October 18, 2018 – Filed June 19, 2019

---

## AFFIRMED

---

Chief Appellate Defender Robert Michael Dudek, of Columbia, for Petitioner.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody J. Brown, Assistant Attorney General Sherrie Butterbaugh, all of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

---

**JUSTICE FEW:** In this appeal from a conviction for murder, we hold the trial court properly refused to charge the law of self-defense. The defendant shot and killed

the victim with an unlawfully-possessed pistol the defendant intentionally brought to an illegal drug transaction.  We find the defendant was at fault in bringing on the violence.  We affirm.

Robert Mitchell made arrangements with Akim Ladson to meet for the purpose of purchasing from Ladson a particularly high-quality variety of marijuana known as "loud."[1]  Mitchell then went to the mobile home where he knew Jalann Williams to be living to recruit Williams as a participant in the drug deal.  The reasons Mitchell recruited Williams—and Williams agreed to go—are disputed.  Mitchell testified Williams told him he was going to the drug deal to rob Ladson because Williams needed money to pay his bail bondsman on other charges.  Williams denied any intent to rob Ladson.  He testified he loaned Mitchell the money to buy "loud," but the price seemed low, so he went to the drug deal to be sure Mitchell was buying the proper marijuana.  His apparent purpose was to ensure his loan would be repaid.  Referring to the price, he testified, "I didn't really trust that but I was like, 'That's him buying and as long as I get my money back by the end of the week I was all right.'"  Williams further explained his purpose, "I said, 'well, I'm going to go along with you because I don't believe nobody got no price [sic] for that weed.'"  He later testified, "Out of the whole my main concern was just to get my money back at the end of the week because I needed the money back."

These disputed facts, however, are not important to our analysis.  What is important to our analysis is the undisputed fact that when Williams agreed to participate in the drug deal, he made a conscious choice to take his loaded pistol with him.

Williams and Mitchell waited for Ladson in the same mobile home park where Williams was living.  Ladson arrived in a car driven by his girlfriend, Alayah Hamlin. Ladson was in the front passenger seat. Williams and Mitchell entered the backseats of Hamlin's car and began the drug deal.  Ladson handed Mitchell the marijuana, and Mitchell began to inspect and weigh it on a portable scale Williams brought with him.  Viewing the evidence in the light most favorable to Williams, Ladson attacked Williams, Williams feared for his safety, and Williams had no opportunity to get away.  Williams then shot and killed Ladson.

---

[1] "Loud" is defined in the Urban Dictionary as, "A slang term for marijuana of high quality," and, "Bomb-ass weed."  See *Loud*, Urban Dictionary, https://www.urbandictionary.com/define.php?term=loud (last visited June 14, 2019).

The State charged Williams with murder, armed robbery, and possession of a firearm during the commission of a violent crime. At trial, Williams requested the trial court charge the jury the law of self-defense as to the murder charge. The trial court refused. The jury convicted Williams of murder and possession of a firearm during the commission of a violent crime. The jury was unable to reach a verdict on the charge that Williams robbed Ladson. The trial court sentenced Williams to thirty years in prison.

Williams appealed, arguing the trial court erred in refusing to charge the law of self-defense. The court of appeals affirmed. *State v. Williams*, Op. No. 2017-UP-015 (S.C. Ct. App. filed Jan. 11, 2017). We granted Williams' petition for a writ of certiorari to review the court of appeals' decision.

The trial court must charge the jury on the law applicable to the jury's deliberations. *See State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) ("The trial court is required to charge only the current and correct law of South Carolina. The law to be charged must be determined from the evidence presented at trial.") (quotations and citations omitted); *Winkler v. State*, 418 S.C. 643, 655, 795 S.E.2d 686, 693 (2016) (holding a trial court should not answer a jury's question if the answer is "not applicable to the jury's deliberations") (citation omitted). In some cases, the jury must be charged that criminal liability for homicide may be excused under the doctrine of self-defense. The law requires this self-defense charge, however, only when there is evidence in the record that supports the right of the defendant to use deadly force. To enable trial courts to determine when the evidence does support that right, and thus when the law of self-defense must be charged to the jury, this Court has listed four elements that must be present. *State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011). If there is no evidence to support the existence of any one element, the trial court must not charge self-defense to the jury. Whether there is any evidence to support each element is a question of law.

This structure places the burden on the defendant to produce some evidence to support the existence of each element. *See Stone v. State*, 294 S.C. 286, 287, 363 S.E.2d 903, 904 (1988) (stating "a defendant is entitled to a jury instruction on self-defense if he has produced evidence tending to show the four elements of that defense"); *State v. Bellamy*, 293 S.C. 103, 105, 359 S.E.2d 63, 64-65 (1987) (stating the defendant "must . . . produce evidence" to support the charge of self-defense), *overruled on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). While the State must present evidence to support the existence of each element of the crime charged, the State is under no burden to produce evidence to refute the existence of self-defense. However, if there is some evidence to support

each element of self-defense—whether found in the State's presentation of evidence or produced by the defendant—it becomes the State's burden to persuade the jury beyond a reasonable doubt that at least one element of the defense does not exist. *See State v. Wiggins*, 330 S.C. 538, 544, 500 S.E.2d 489, 492-93 (1998) (stating "current law requires the State to disprove self-defense, once raised by the defendant, beyond a reasonable doubt"); *Bellamy*, 293 S.C. at 105, 359 S.E.2d at 64 (finding the trial court erred in holding the defendant to the burden of persuasion (relying on *State v. Glover*, 284 S.C. 152, 326 S.E.2d 150 (1985), and *State v. Davis*, 282 S.C. 45, 317 S.E.2d 452 (1984))).

This case involves the element we have traditionally described as, "The defendant [must be] without fault in bringing on the difficulty." *Dickey*, 394 S.C. at 499, 716 S.E.2d at 101. The issue in this case is whether there was any evidence presented at trial that would support a finding Williams was "without fault."[2] We addressed the element in *State v. Bryant*, 336 S.C. 340, 520 S.E.2d 319 (1999). We held the defendant's actions precluded a charge on self-defense as a matter of law because he was "responsible for bringing on the difficulty." 336 S.C. at 346, 520 S.E.2d at 322. We explained, "Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a[n] . . . excuse for a homicide." 336 S.C. at 345, 520 S.E.2d at 322 (citing 40 Am. Jur. 2d *Homicide* § 149 (1999)). We established in *Bryant* the principle that a defendant is not entitled to a charge of self-defense if the evidence supports only the conclusion that he acted "in violation of law" in a manner "reasonably calculated to produce [a violent] occasion." *Id.*

Under this principle from *Bryant*, the trial court properly refused to charge self-defense. Williams' act of intentionally bringing a loaded, unlawfully-possessed pistol to an illegal drug transaction was a "violation of law" that was "reasonably calculated to produce" violence. *Id.* Williams' act "bars his right to assert self-defense as a[n] . . . excuse for a homicide." *Id.*

Intentionally bringing a loaded, unlawfully-possessed pistol to an illegal marijuana transaction is "in violation of law" in three important respects. First, Williams'

---

[2] We readily acknowledge Ladson was at fault, and perhaps Mitchell and Hamlin. The question, however, is not who else might have been at fault, but whether Williams was *without* fault. In answering that question, it does not matter who else was at fault. Thus, the fact "there is evidence . . . that Ladson . . . produced the violent occasion" is not relevant. The dissent mistakenly relies on the premise that only one person can be at fault.

possession of the pistol was a violation of law. *See* S.C. Code Ann. § 16-23-20 (2015) (providing, "It is unlawful for anyone to carry about the person any handgun . . . except . . ." under circumstances not applicable in this case). Second, the possession, purchase, or sale of marijuana is a violation of state and federal law. S.C. Code Ann. § 44-53-370(a) and (c) (2018); 21 U.S.C.A. §§ 841, 844 (West 2013). Third, and most important, it is a separate violation of federal law to bring any gun to an illegal drug transaction. Subsection 18 U.S.C.A. § 924(c)(1)(A) (West 2015) provides, "any person who, during and in relation to any . . . drug trafficking crime . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, (i) be sentenced to a term of imprisonment of not less than 5 years . . . ."

In addition, intentionally bringing a loaded, unlawfully-possessed pistol to an illegal drug transaction is "calculated to produce a violent occasion." Williams' pistol was not simply a convenience for him so he could protect himself just in case violence arose. Rather, it is well-documented that the mere presence of guns at illegal drug transactions *produces* the violence. *See Harmelin v. Michigan*, 501 U.S. 957, 1003, 111 S. Ct. 2680, 2706, 115 L. Ed. 2d 836, 870 (1991) ("Studies . . . demonstrate a direct nexus between illegal drugs and crimes of violence."); *State v. Banda*, 371 S.C. 245, 253, 639 S.E.2d 36, 40 (2006) (citing, in a different context, the "indisputable nexus between drugs and guns"). Congress enacted subsection 924(c)(1)(A) for the purpose of separately criminalizing the combination of drug dealing and unlawful possession of a gun, not just the individual crimes. *See Smith v. United States*, 508 U.S. 223, 240, 113 S. Ct. 2050, 2060, 124 L. Ed. 2d 138, 155 (1993) ("When Congress enacted the current version of § 924(c)(1), it was no doubt aware that drugs and guns are a dangerous combination."). Congress recognized the causal connection between the presence of an unlawfully-possessed gun and violence in illegal drug transactions. *See Muscarello v. United States*, 524 U.S. 125, 132, 118 S. Ct. 1911, 1916, 141 L. Ed. 2d 111, 118 (1998) ("This Court has described [subsection 924(c)(1)'s] basic purpose broadly, as an effort to combat the 'dangerous combination' of 'drugs and guns.'" (citing *Smith*, 508 U.S. at 240, 113 S. Ct. at 2060, 124 L. Ed. 2d at 155).

We have held—in other circumstances—a defendant may lawfully arm himself in self-defense even when in unlawful possession of a firearm. *See, e.g.*, *State v. Burriss*, 334 S.C. 256, 513 S.E.2d 104 (1999). In *Burriss*, several men attacked and attempted to rob the defendant. 334 S.C. at 258, 513 S.E.2d at 106. The defendant pulled a gun and intentionally fired it into the ground. The shot caused a short pause in the fight. When the fight resumed, the gun fired again—the defendant claimed accidentally—killing one of the men who attacked him. 334 S.C. at 258-59, 513

S.E.2d at 106. We reversed the trial court's refusal to charge the law of accident, 334 S.C. at 264, 513 S.E.2d at 109, stating "a person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting," 334 S.C. at 262, 513 S.E.2d at 108; *see also State v. Slater*, 373 S.C. 66, 71, 644 S.E.2d 50, 53 (2007) (stating "the [*Burriss* accident] analysis is equally applicable in determining if a defendant in unlawful possession of a weapon is entitled to a charge on self-defense").

The defendant in *Burriss* was not doing anything "in violation of law" except unlawfully possessing a pistol. As the *Burriss* majority explained, the defendant simply "went to visit a friend at [the friend's] apartment" and "was waiting for his friend to come out of the apartment" when the men attacked him. 334 S.C. at 258, 513 S.E.2d at 106. In this case, Williams was doing something "in violation of law" in addition to merely unlawfully possessing a pistol. He was participating in an illegal drug deal for which he illegally armed himself in violation of 18 U.S.C.A. § 924(c)(1)(A).

For this reason, Williams' case is more like *Slater*. In that case, Lord Byron Slater "noticed that [a] disturbance was taking place in an adjacent parking lot. Carrying his gun with him, [Lord Byron] went to the adjacent parking lot to investigate." 373 S.C. at 68, 644 S.E.2d at 51. The "disturbance" turned out to be a robbery, and when Lord Byron "surprised one of the attackers . . . , the man turned around and pointed a gun." *Id.* Lord Byron shot and killed him. *Id.* At Lord Byron's trial for "murder and possession of a firearm during the commission of a violent crime," 373 S.C. at 67-68, 644 S.E.2d at 51, the trial court refused to charge self-defense, 373 S.C. at 69, 644 S.E.2d at 52. The jury convicted Lord Byron of both charges. *Id.*

On appeal, relying on *Burriss*, Lord Byron argued the trial court erred in refusing the self-defense charge. 373 S.C. at 69-70, 644 S.E.2d at 52. We affirmed the trial court,[3] stating, Lord Byron "fails to meet the first requirement for the self-defense charge: specifically, [Lord Byron] was not without fault in bringing on the difficulty." 373 S.C. at 70, 644 S.E.2d at 52. We cited the passage above from *Bryant*, and observed that Lord Byron "approached an altercation that was already

---

[3] The court of appeals reversed the trial court in a split decision. *State v. Slater*, 360 S.C. 487, 493, 602 S.E.2d 90, 94 (Ct. App. 2004) (Hearn, C.J., dissenting), *rev'd*, 373 S.C. 66, 644 S.E.2d 50 (2007). On the State's petition for a writ of certiorari, we reversed the court of appeals and reinstated the jury verdict. 373 S.C. at 71, 644 S.E.2d at 53.

underway with a loaded weapon by his side," which we found was "reasonably calculated to bring the difficulty." 373 S.C. at 70, 644 S.E.2d at 52.

*Slater* is not identical to Williams' case. In fact, we stated Lord Byron "carried the cocked weapon, in open view, into an already violent attack." 373 S.C. at 71, 644 S.E.2d at 53. Here—although Williams made his gun possession known to Mitchell—the evidence indicates Williams concealed his pistol from Ladson until he was attacked. However, *Slater* is important to our analysis in this case because Lord Byron armed himself for the purpose of entering into a situation he knew to be rife with violence—just like Williams did here.

*Slater* is also important because we explained *Burriss*. Referring to *Burriss*, we "reject[ed] the position that the unlawful possession of a weapon could never constitute an unlawful activity which would preclude the assertion of self-defense." 373 S.C. at 70, 644 S.E.2d at 52-53. Further explaining *Burriss*, we stated, "Clarifying an ambiguity in this Court's prior case law, we noted [in *Burriss*] that where the defendant's unlawful possession of a weapon is *merely incidental* to the defendant's lawful act of arming himself in self-defense, the unlawful possession of the weapon will not prevent the use of an accident defense." 373 S.C. at 71, 644 S.E.2d at 53 (emphasis added) (citing *Burriss*, 334 S.C. at 262 n.5, 513 S.E.2d at 108 n.5).

Where the unlawful possession of a weapon is not "merely incidental," as we found it was not in *Slater*, the unlawful possession of a weapon does foreclose a self-defense charge. Like Lord Byron, Williams illegally armed himself before he chose to enter a situation he knew to be unlawful, and which he knew was likely to be violent. Williams' actions proximately caused the difficulty[4] as a matter of established law because his act of taking a loaded, unlawfully-possessed pistol into an illegal drug transaction was not "merely incidental" to the act of arming himself in self-defense. *Bryant*, 336 S.C. at 345, 520 S.E.2d at 322; *Slater*, 373 S.C. at 71, 644 S.E.2d at 53; *see also State v. Smith*, 391 S.C. 408, 415, 706 S.E.2d 12, 16 (2011) (holding, "Because Smith was acting unlawfully" in taking a loaded, unlawfully-carried pistol into an illegal drug transaction, "he was not entitled to an accident charge").

---

[4] In *Slater*, we said the question was whether "the weapon is the proximate cause of the killing." 373 S.C. at 71, 644 S.E.2d at 53. We should have said the question is whether it is the proximate cause of the "difficulty" or "occasion" that led to the killing.

We conclude with a quote from now Chief Judge Lockemy of the court of appeals in *State v. Smith*, 406 S.C. 547, 752 S.E.2d 795 (Ct. App. 2013). Concurring in the majority's decision to affirm the trial court's refusal to grant the defendant a directed verdict on the basis of self-defense, Judge Lockemy argued that bringing a loaded, unlawfully-possessed pistol to an illegal drug deal forecloses self-defense,

> At the time of the shooting, Smith was engaged in the crime of selling illegal drugs. This activity, in addition to damaging the lives of untold numbers of people, also results in shootings and deaths on a very frequent basis. Smith's decision to bring a loaded weapon to the drug deal clearly shows his knowledge of the danger of the situation. His criminal conduct brought on the necessity to take the life of another. Smith created a situation fraught with peril. He cannot be excused for the violence that logically and tragically often occurs when engaging in such conduct, nor can he claim he did not anticipate the high probability of such violence.

406 S.C. at 557, 752 S.E.2d at 800 (Lockemy, J., concurring).

In some future case involving facts different from these, perhaps the defendant will convince the trial court he has produced evidence he was not at fault in bringing on the violent occasion. In this case, however, there is no evidence on which a jury may find Williams' unlawful possession of a loaded pistol during an illegal drug transaction was "merely incidental" to arming himself in self-defense. Rather—as a matter of law—Williams' act of taking the pistol to the drug deal was a violation of law that produced the violent occasion. *Bryant*, 336 S.C. at 345, 520 S.E.2d at 322. The trial court correctly refused the charge.

**AFFIRMED.**

**KITTREDGE and HEARN, JJ., concur. JAMES, J., dissenting in a separate opinion in which BEATTY, C.J., concurs.**

**JUSTICE JAMES:** I dissent. Presumably, the majority would not balk at the giving of a self-defense instruction if Ladson and Williams (with a gun illegally concealed in his back pocket) had not been engaged in a drug deal but had instead been arguing about which radio station to listen to. I fully agree illegal drug transactions are rife with violence. They are an absolute blight on civilized society. However, I believe our self-defense law already adequately sets forth the parameters of how judges and juries are to consider the question of whether a drug-dealing or drug-purchasing defendant was or was not "without fault in bringing on the difficulty."

The majority cites this Court's holding in *State v. Bryant* that a defendant's act "in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense." 336 S.C. 340, 345, 520 S.E.2d 319, 322 (1999). As does the majority, I emphasize the portion of our holding in *Bryant* that self-defense is barred if the defendant's act was reasonably calculated to produce the violent occasion. Here, even the majority acknowledges the evidence indicates the gun was in Williams' back pocket the entire time before Ladson climbed over the front seat and then got on top of and began to choke Williams, who was in the back seat. I respectfully reject the majority's supposition that I rely upon the premise that only one person can be at fault in "bringing on the difficulty" as contemplated in our self-defense law. I do not. I simply conclude there is evidence <u>in this case</u> that Ladson, and Ladson only, produced the violent occasion by attacking Williams, which in turn led to Williams retrieving his gun from his back pocket and firing in self-defense.

In its footnote 4, the majority clarifies our holding in *State v. Slater*,[5] by stating, "In *Slater*, we said the question was whether 'the weapon is the proximate cause of the killing.' 373 S.C. at 71, 644 S.E.2d at 53. We should have said the question is whether it is the proximate cause of the 'difficulty' or 'occasion' that led to the killing." I agree with that clarification, and I believe it requires the giving of a self-defense instruction in this case; as applied to the evidence in this record, there is evidence to support a finding by a jury that, in this case, the sole proximate cause of the "difficulty" or the "occasion" that led to the killing was Ladson choking Williams, not Williams having a gun in his back pocket.

The majority cites *Slater* for the proposition that "where the defendant's unlawful possession of a weapon is *merely incidental* to the defendant's lawful act of arming himself in self-defense, the unlawful possession of the weapon will not prevent the

---

[5] 373 S.C. 66, 644 S.E.2d 50 (2007).

use of an accident defense."  373 S.C. at 71, 644 S.E.2d at 53 (emphasis added) (citing *State v. Burriss*, 334 S.C. 256, 262 n.5, 513 S.E.2d 104, 108 n.5 (1999)).[6] Again, the majority acknowledges the evidence indicates Williams' gun was in his back pocket until he was attacked by Ladson.  Consequently, there is evidence that the taking of the gun to the transaction was "merely incidental" to Williams lawfully arming himself in self-defense after being attacked.  In other words, Williams' possession of the gun was a moot point, legally and factually, until Ladson brought about the difficulty by choking Williams.

The defendant who, without first being attacked, brandishes a firearm during the course of any transaction, whether it is an illegal drug deal or otherwise, will likely be considered, as a matter of law, to have "brought about the difficulty."  In virtually every such scenario, any violence that breaks out would likely be "calculated to produce" the violence that ensued.  However, the majority makes an illogical and unnecessary leap when it broadly concludes that "intentionally bringing a loaded, unlawfully-possessed pistol to an illegal drug transaction is 'calculated to produce a violent occasion.'"

Finally, and most respectfully, I take issue with the majority's emphasis of now Chief Judge Lockemy's concurrence in *State v. Smith*, in which he expresses his view that because the defendant was engaged in the crime of selling illegal drugs, his decision to bring a loaded weapon to the transaction foreclosed self-defense.  406 S.C. 547, 557, 752 S.E.2d 795, 800 (Ct. App. 2013).  In the very next paragraph, however, the majority states it does not foreclose the possibility that a future drug-dealing or drug-purchasing defendant will rightly convince a trial court that a self-defense instruction is warranted.  At the least, the majority is giving the trial bench mixed signals on this issue.

I would reverse Williams' convictions and remand for a new trial.

**BEATTY, C.J., concurs.**

---

[6] Of course, we have extended our reasoning to the issue of self-defense.  *See Slater*, 373 S.C. at 71, 644 S.E.2d at 53.