**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Robert Mondriques Jones, Appellant.

Appellate Case No. 2011-186367

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2013-UP-393
Heard September 11, 2013 – Filed October 16, 2013

**AFFIRMED**

Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Brendan Jackson McDonald, both of
Columbia, for Respondent.

**PER CURIAM:**  Robert Mondriques Jones appeals his convictions of murder, assault and battery with intent to kill (ABWIK), possession of a weapon during the commission of a violent crime, and possession of a pistol by a person under

eighteen years of age. Jones asserts the trial court erred in (1) refusing to charge voluntary manslaughter based on the evidence presented at trial; (2) refusing to charge the jury that unlawful possession of a weapon does not preclude a finding of self-defense; and (3) allowing the State to present expert testimony about gangs in reply. We affirm.

1.      We first find the trial court properly declined to charge voluntary manslaughter based on the evidence presented. "Voluntary manslaughter is the intentional and unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Smith*, 391 S.C. 408, 412-13, 706 S.E.2d 12, 14 (2011). "For a defendant to be entitled to a voluntary manslaughter charge, there must be evidence of both sufficient legal provocation and heat of passion at the time of the killing." *Id.* at 413, 706 S.E.2d at 15. "The sudden heat of passion, upon sufficient legal provocation, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *Id.* "[A] defendant is not entitled to [a] voluntary manslaughter [charge] merely because he was legally provoked." *State v. Starnes*, 388 S.C. 590, 597, 698 S.E.2d 604, 608 (2010). "Moreover, there must be evidence that the heat of passion was caused by sufficient legal provocation." *Id.* Though one's fear immediately following an attack or threatening act may cause the person to act in a sudden heat of passion, the mere fact that one is afraid is not sufficient, by itself, to entitle a defendant to a voluntary manslaughter charge. *Id.* at 598, 698 S.E.2d at 609. "[I]n order to constitute 'sudden heat of passion upon sufficient legal provocation,' the fear must be the result of sufficient legal provocation and cause the defendant to lose control and create an uncontrollable impulse to do violence." *Id.* "Succinctly stated, to warrant a voluntary manslaughter charge, the defendant's fear must manifest itself in an uncontrollable impulse to do violence." *Id.* at 598-99, 698 S.E.2d at 609.

Jones arguably presented evidence of sufficient legal provocation. However, Jones' own testimony indicated that he did not shoot Vincent because he was enraged, was incapable of "cool reflection," or was acting under "an uncontrollable impulse to do violence." No evidence was presented that Jones was acting in a sudden heat of passion when he shot Vincent. Rather, Jones' testimony makes clear that he shot Vincent solely in self-defense or in defense of his girlfriend. Thus, the evidence shows Jones intentionally shot Vincent, and he did so either with malice aforethought, or in defense of himself or others. *See Starnes*, 388 S.C.

at 599, 698 S.E.2d at 609 ("A person may act in a deliberate, controlled manner, notwithstanding the fact that he is afraid or in fear. Conversely, a person can be acting under an uncontrollable impulse to do violence and be incapable of cool reflection as a result of fear. The latter situation constitutes sudden heat of passion, but the former does not. . . . Turning to the facts of this case, viewing the evidence in the light most favorable to Appellant, there is no evidence to support a voluntary manslaughter charge. . . . While [there is evidence] Appellant was in fear, there is no evidence Appellant was out of control as a result of his fear or was acting under an uncontrollable impulse to do violence. The only evidence in the record is that Appellant deliberately and intentionally shot [the two victims] and that he either shot the men with malice aforethought or in self-defense.").

2.  We also find no merit to Jones' argument the trial judge erred in refusing to charge the jury that unlawful possession of a weapon does not necessarily preclude a finding that appellant acted in self-defense. The record reflects trial counsel requested a charge that "the possession of an unlawful weapon does not preclude [a defendant] from self-defense — does not bar a self-defense charge," citing the case of *State v. Slater*, 373 S.C. 66, 644 S.E.2d 50 (2007). The trial court noted that, in *Slater*, self-defense was not charged, but self-defense had been charged in this matter. The court therefore declined to give the requested charge. The trial court thereafter thoroughly charged the jury on the elements of self-defense and various aspects of self-defense law pertinent to the circumstances of this case, such as the right to act on appearances, prior instances of violence by the victim, prior threats by the victim, and the right to act in self-preservation to avoid the victim getting the drop.

Assuming arguendo that Jones made a timely request for the instruction, we find no error. Jones relies on *Slater* and *State v. Burriss*, 334 S.C. 256, 513 S.E.2d 104 (1999) in support of his position that he was entitled to the charge. *Slater* and *Burriss* admittedly provide that the unlawful possession of a weapon alone will not necessarily foreclose a defense of accident, involuntary manslaughter, or self-defense, because one who is in unlawful possession of a weapon may, under the proper circumstances, lawfully arm himself in self-defense. *Slater*, 373 S.C. at 70-71, 644 S.E.2d at 52-53; *Burriss*, 334 S.C. at 262, 265, 513 S.E.2d at 108, 109. However, the issues in those cases dealt with whether or not a self-defense charge (*Slater*) or an accident or involuntary manslaughter charge (*Burriss*) was appropriate under the circumstances, noting one in unlawful possession of a weapon may be lawfully armed in self-defense. *See Slater*, 373 S.C. at 71, 644 S.E.2d at 53 ("[W]here the defendant's unlawful possession of a weapon is merely

incidental to the defendant's lawful act of arming himself in self-defense, the unlawful possession of the weapon will not prevent the use of an accident defense."); *Burriss*, 334 S.C. at 262, 513 S.E.2d at 108 ("[A] person can be acting lawfully, even if he is in unlawful possession of a weapon, if he was entitled to arm himself in self-defense at the time of the shooting."). *Slater* and *Burriss* do not address whether one would be entitled to a jury charge that unlawful possession of a weapon would not necessarily bar a finding that a defendant acted in self-defense. In other words, the law was addressed in these cases solely in determining whether self-defense or accident charges were appropriate, and not whether a separate charge to the jury — that one being in unlawful possession of a weapon would not necessarily bar self-defense —– was required. Research reveals no South Carolina case law finding such to be a required charge to the jury. Rather, such law is cited in regard to a determination of whether one is entitled to a self-defense, accident or involuntary manslaughter charge when the circumstances include that the defendant was in unlawful possession of a weapon. *See In re Tracy B.*, 391 S.C. 51, 71, 704 S.E.2d 71, 81 (Ct. App. 2010) (noting, although unlawful possession of a weapon alone does not automatically bar a self-defense charge, it is evidence of an unlawful activity which can preclude the assertion of self-defense).

We find no error. The fact that the jury was charged on self-defense is an indication in and of itself that the unlawful possession of a weapon does not necessarily preclude a finding of self-defense. Additionally, much of the argument relied upon by Jones in his appeal was never raised to the trial court. Specifically, Jones did not argue to the trial court, as he does on appeal, that the rulings in *Slater* and *Burris* should be *extended* to require the jury be charged in this manner. Further, as noted by the State, Jones never pointed to the closing argument of the State as mandating such a charge at the trial level as he does on appeal. *See State v. Freiburger*, 366 S.C. 125, 134, 620 S.E.2d 737, 741 (2005) (finding argument advanced on appeal was not raised and ruled on below and therefore was not preserved for review).

3.     Finally, we find no reversible error in the admission of testimony from the witness qualified as an expert on gangs. Jones argues the trial court erred in allowing the expert to testify generally about gangs in reply because the crimes for which he was on trial were not gang related and he already admitted he had formerly been involved with a gang, making the testimony irrelevant and highly prejudicial. Citing Rule 403, SCRE, Jones maintains, even if the expert's testimony was proper reply testimony in response to his testimony that he was no

longer involved with a gang, the prejudicial impact of such testimony outweighed any purported probative value.  We disagree.

On cross-examination, Jones admitted that five red bandannas, located under a mattress in his room along with a box of bullets, belonged to him.  The State showed Jones a picture and questioned him concerning gang graffiti found in a storage room where he lived.  Jones testified he was not responsible for the graffiti inside the storage room, but claimed it was done by one of his friends.  The graffiti included words or symbols meaning "Life" and "Blood," along with "Nine," "Trey," and "Gangstas."  Jones acknowledged that "Nine Trey Gangstas" was written together, and that it indicated a "blood gang."   Jones claimed to know "Nine Trey Gangstas" was a blood gang because he had friends who were a part of it, but he denied that he was part of it.  Jones acknowledged he had the initials "NTG" tattooed on his arm, which stood for "Nine Trey Gangstas," a blood gang.  He again denied, however, being a member of a blood gang.  When asked why he would have the tattoo on his arm if he were not a member, Jones replied, "Because I was a part of it."  He denied, however, that he was still a member.  The solicitor then asked Jones if gangs were "for life," and Jones stated, "I guess so if you would call it that."  Jones testified he became involved with the blood gang around the age of fourteen or fifteen, and did so because he was hanging around the wrong crowd.  All of this gang evidence was admitted without objection from the defense.

When the solicitor then asked Jones how he became a member of the gang, defense counsel objected to the line of questioning based on relevancy, and a bench conference was held off the record.  When questioning resumed,[1] Jones agreed he joined the gang when he was fourteen or fifteen years old and the shooting occurred when he was seventeen years old, but he continued to insist he was no longer a part of the gang, claiming he stopped being a member when he was sixteen years old.  Jones also denied having a conversation in front of Crystal's cousin, Jennifer, wherein he indicated he was a member of a blood gang.  Jones further denied stating in front of Jennifer that if Vincent ever hit Crystal again, he was going to shoot Vincent or have someone else shoot him.

[1] It is not clear what was argued during the bench conference or how the trial court ultimately ruled.  No further on-record objections were raised to any other evidence relating to gangs during Jones' testimony.

Thereafter, the State, without objection, elicited reply testimony from Crystal's cousin, Jennifer. Jennifer testified that, during the time Crystal was living in Belton, she heard Jones comment about a gang, stating he was part of "The Bloods." She also heard Jones state he would shoot Vincent if Vincent hurt Crystal, or he would get someone else to shoot Vincent.

The State also called Greenville County Sheriff's Office Gang Investigator Brandon Brown in reply, over Jones' objection, asserting his testimony was admissible as proper rebuttal testimony in a challenge to Jones' credibility. Trial counsel objected to Brown being qualified as an expert in gangs arguing "being an expert on gangs has nothing to do with this case." The court found Brown qualified, and Brown thereafter testified concerning his general knowledge about gangs, as well as his knowledge about "The Bloods," a gang present in the Upstate. Brown stated that the color associated with "The Bloods" is primarily the color red, which is used as a physical identifier of the gang. He also testified how one is generally initiated into a gang —— through a beat in, through a criminal act, or through a bless in —— and how one can exit a gang —— by reaching a high enough rank after putting in enough work, typically coming around the age of mid 30's to late 40's, or possibly through beat ins or criminal acts, which are very rarely seen in the area. When asked whether it would be unusual for someone to claim he is no longer a member of a gang but still be involved with one, Brown stated, "I don't really know how you can still be involved and not a member anymore. It's kind of one of those things it's a Blood in, Blood out mentality. Once you're in you're going to put in the work until it comes a time where you gained enough rank and respect that you don't have to. The guys underneath you are going to put in the work for you. But you're never going to become a gang member and then quit being a gang member but still live the gang lifestyle. It simply doesn't exist."

We agree with the State that the probative value of Investigator Brown's impeachment testimony was not substantially outweighed by the danger of unfair prejudice, inasmuch as extensive evidence of Jones' gang affiliation had already been admitted without objection.

In criminal cases, this court sits to review errors of law only, and is bound by the trial court's factual findings unless those findings are clearly erroneous. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The admission or exclusion of evidence is left to the sound discretion of the trial judge, whose decision will not be reversed on appeal absent an abuse of discretion." *State v. Black*, 400 S.C. 10, 16, 732 S.E.2d 880, 884 (2012). "An abuse of discretion occurs when the trial

court's ruling is based on an error of law or, when grounded in factual conclusions, is without evidentiary support." *Id.* As well, the admission of reply testimony is within the sound discretion of the trial judge. *State v. Todd*, 290 S.C. 212, 214, 349 S.E.2d 339, 340 (1986). There is no abuse of discretion in the admission of reply testimony if it "is arguably contradictory of and in reply to earlier testimony." *Id.*

As a general rule, all relevant evidence is admissible. Rule 402, SCRE. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. However, relevant evidence may be excluded if the prejudicial effect of its admission substantially outweighs the probative value of the evidence. *See* Rule 403, SCRE ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ."). "Unfair prejudice means an undue tendency to suggest decision on an improper basis." *State v. Wiles*, 383 S.C. 151, 158, 679 S.E.2d 172, 176 (2009).

An appellate court reviews Rule 403, SCRE, balancing determinations pursuant to the abuse of discretion standard and gives great deference to the trial court's decision. *State v. Myers*, 359 S.C. 40, 48, 596 S.E.2d 488, 492 (2004). "A trial court has particularly wide discretion in ruling on Rule 403 objections." *State v. Lee*, 399 S.C. 521, 527, 732 S.E.2d 225, 228 (Ct. App. 2012). A trial court's determination in regard to the comparative probative value and prejudicial effect of evidence should only be reversed in exceptional circumstances. *State v. Stephens*, 398 S.C. 314, 319, 728 S.E.2d 68, 71 (Ct. App. 2012). Further, "[a] trial judge's balancing decision under Rule 403 should not be reversed simply because an appellate court believes it would have decided the matter otherwise because of a differing view of the highly subjective factors of the probative value or the prejudice presented by the evidence." *Id.* at 320, 728 S.E.2d at 71. "If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *Id.*

Here, although Jones contends that gang evidence was irrelevant in this case since the crimes for which he was on trial were not gang related, he does not contest the relevancy of Investigator Brown's testimony as to his credibility. The testimony of the gang expert clearly challenged Jones' testimony that he was no longer a member of a gang. Further, as noted, substantial evidence of Jones' affiliation with a gang was admitted into evidence during Jones' testimony prior to any objection

by Jones. Additionally, Jones did not object to the testimony from Jennifer concerning his purported gang affiliation. Investigator Brown's testimony served to impeach Jones' testimony that he was no longer affiliated with the gang. Because his testimony was relevant for impeachment purposes, and because extensive evidence of Jones' gang involvement had already been admitted without objection, we believe the probative value of Investigator Brown's testimony was not substantially outweighed by the danger of unfair prejudice. We therefore find no reversible error in the admission of Investigator Brown's testimony in reply.

**AFFIRMED.**

**HUFF, GEATHERS, and LOCKEMY, JJ., concur.**